**IPCO–G.&C. JOINT VENTURE; IPCO, Inc., and Gregory & Cook, Inc., Appellants,**

v.

**A.B. CHANCE COMPANY, Appellee.**

No. 01–99–01435–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Nov. 29, 2001.

Rehearing Overruled Jan. 31, 2002.

David Redford, Davis, Oretsky & Guilfoyle, Houston, for Appellants.

Byron G. Lee, Coats, Rose, Yale, Holm, Ryman & Lee, P.C., Houston, for Appellee.

Panel consists of Chief Justice SCHNEIDER and Justices WILSON and JENNINGS.

## OPINION

JENNINGS, Justice.

This appeal arises from the trial court's confirmation of a take-nothing arbitration award in favor of appellee, A.B. Chance Company ("Chance"), against appellants, IPCO–G.&C. Joint Venture, IPCO, Inc., and Gregory & Cook, Inc. (collectively "IPCO"). By agreement, the parties submitted their dispute to binding arbitration after IPCO filed suit against Chance, alleging damages in relation to problems with the construction of a natural gas pipeline.

In three points of error, IPCO argues the trial court erred in affirming the arbitration award because (1) the arbitrator improperly conducted an *ex parte* independent investigation of evidence material to the award; (2) the arbitrator refused to hear material evidence; and (3) the arbitration award was based on a "gross mistake of law." We affirm.

### Factual and Procedural Background

IPCO entered into a contract with the government of Thailand to construct a natural gas pipeline in that country. IPCO awarded the construction bid for this project to Energy Structures Inc. ("ESI"). The pipeline was designed to remain submerged underwater at certain points where the pipeline crossed "klongs," or canals, and was to be held in place at those locations by ground anchors and anchor straps. The anchor systems for the pipeline were manufactured by Chance, and installed by ESI. At two locations in the pipeline where it crossed klongs, kilometer points 22 ("KP22") and 42 ("KP42"), sections of the pipeline floated up, causing a break in the line. There were two anchor failures alleged to have occurred at KP22 and one at KP42.

In its original petition, IPCO brought suit against ESI and Chance for negligence, strict products liability, breach of express and implied warranties, breach of contract, gross negligence, and attorney's fees.[1] IPCO alleged it sustained damages in excess of $7 million as a result of the problems with the pipeline, including the costs of repairing the pipeline and loss of potential business dealings with the government of Thailand.

After suit was filed, the parties entered into an agreement to submit their dispute to binding arbitration, under the terms of the Texas Arbitration Act, and to have their agreement and arbitration proceedings "construed and enforced in accordance with and governed by the laws of the State of Texas." An arbitration hearing was conducted by Michael Clann, the arbitrator agreed upon by the parties in their arbitration agreement. At the four-day arbitration hearing, the parties presented witness testimony and numerous exhibits. The arbitrator issued his take-nothing award, in favor of Chance, on June 28, 1999. IPCO filed a motion to modify the award, which was denied by the arbitrator after an oral hearing.[2] The trial court subsequently entered a final judgment in favor of Chance, in accordance with the arbitrator's award, and denied IPCO's request for findings of fact and conclusions of law. IPCO timely filed its notice of appeal.

### Standard of Review

 There is no dispute among the parties that they entered into a valid, binding arbitration agreement. Texas law favors arbitration. *Brazoria County v. Knutson*, 142 Tex. 172, 176 S.W.2d 740,

---

1. Prior to arbitration, ESI settled all claims brought against it by IPCO.

2. No record was made of this hearing.

743 (1943). Statutory arbitration is cumulative of the common law. *J.J. Gregory Gourmet Servs. v. Antone's Import Co.*, 927 S.W.2d 31, 33 (Tex.App.—Houston [1st Dist.] 1995, no writ). Our review of an arbitration award is extremely narrow. Common law allows a trial court to set aside an arbitration award "only if the decision is tainted with fraud, misconduct, or gross mistake as would imply bad faith and failure to exercise honest judgment." *Teleometrics Internat'l, Inc. v. Hall*, 922 S.W.2d 189, 193 (Tex.App.—Houston [1st Dist.] 1995, writ denied). Because arbitration is favored as a means of dispute resolution, courts indulge every reasonable presumption in favor of upholding the award. *Id.; Wetzel v. Sullivan, King & Sabom, P.C.*, 745 S.W.2d 78, 81 (Tex. App.—Houston [1st Dist.] 1988, no writ).

■ An arbitration award has the same effect as a judgment of a court of last resort, and a court reviewing the award may not substitute its judgment for the arbitrator's merely because the court would have reached a different decision. *City of Baytown v. C.L. Winter, Inc.*, 886 S.W.2d 515, 518 (Tex.App.—Houston [1st Dist.] 1994, writ denied). Every reasonable presumption must be indulged to uphold the arbitrator's decision, and none is indulged against it. *Id.* A mere mistake of fact or law is insufficient to set aside an arbitration award. *J.J. Gregory Gourmet Servs.*, 927 S.W.2d at 33. In the absence of a statutory or common law ground to vacate or modify an arbitration award, a reviewing court lacks jurisdiction to review other complaints, including the sufficiency of the evidence to support the award. *Id.* We apply this standard in reviewing the issues raised by IPCO on appeal.

### Arbitrator's *Ex Parte* Conduct

■ In its first issue, IPCO contends the trial court should have vacated the arbitration award on the grounds that the award was procured by "undue means," as a result of improper conduct by the arbitrator. IPCO argues the arbitrator made an improper "independent investigation" of evidence material to the award and then relied on the results of that investigation in making the award. The investigation IPCO complains of consisted of a single *ex parte* telephone call by the arbitrator to IPCO's counsel after the conclusion of the arbitration hearing and before the arbitrator made his award.

In their written arbitration agreement, the parties agreed to submit their dispute to binding arbitration. Section 10 of that agreement provides as follows: "The parties agree that an award made by the arbitrator may be vacated by a court only upon proof as required by the Texas Civil Practice and Remedies Code § 171.014." Section 171.014 of the Code was a provision of the Texas Arbitration Act, but was repealed, and essentially re-numbered, two months before the parties signed the arbitration agreement.[3] Former section 171.014 read, in relevant part, as follows:

(a) Upon application of a party, the court shall vacate an award where:

(1) the award was procured by corruption, fraud *or other undue means* ....

(Emphasis added.)

In an affidavit attached to IPCO's motion to vacate the arbitration award, filed with the trial court, counsel for IPCO recounted a telephone conversation with the

---

**3.** Act of May 24, 1995, 74th Leg., R.S., ch. 588, § 1, 1995 Tex. Gen. Laws 3402, 3407, *repealed by*, Act of May 21, 1997, 75th Leg., R.S., ch. 165, § 5.01, 1997 Tex. Gen. Laws 327, 334 (current version at Tex. Civ. Prac. & Rem.Code Ann. § 171.088 (Vernon Supp. 2001)).

arbitrator. That affidavit reads, in relevant part:

> In late May, 1999, when the arbitrator was considering his decision related to the arbitration, I received a call from the arbitrator. The call did not last more than a minute. He stated that at the risk of being an *ex parte* communication, he wanted to ask me a couple of questions. He first asked if it took about nine days to do the repair work related to the brackets after the first failure at KP22. I told him that this was about right. He then asked if there had been anchors at other klongs on the pipeline and if there had been any brackets fail at other klongs. I told him that I thought that there were possibly other klongs with anchors but I did not know for sure. I then told him that there was no evidence in the record on this. He did not respond.

IPCO argues that this inquiry by the arbitrator was improper and materially affected the award. No testimony or affidavit from the arbitrator appears in the record. In the arbitration award, while discussing the initial failure at KP22, the arbitrator noted:

> However, we do not know that the only forces brought to bear on the pipeline were the buoyancy up-lift forces. In fact such a conclusion, at least to me, seems counter-intuitive, *because failures did not occur at other klongs* and we know that at this klong the forces brought to bear in the second failure were in excess of 110,000 pounds. In any event, the plaintiff has the burden of proving the cause of the failure. Despite counsel's able efforts, that burden was not met.

(Emphasis added.)

IPCO does not assert that the arbitration award was procured by fraud or corruption. At oral argument, counsel for IPCO affirmed its position that it was not questioning the arbitrator's honesty or integrity. Rather, IPCO argues the telephone call from the arbitrator to its counsel to inquire about anchor failures at other klongs was an improper *ex parte* contact and an independent investigation of this matter, and thus constitutes "other undue means" sufficient to justify vacating the award.

 The telephone call made by the arbitrator was an *ex parte* contact, as acknowledged by the arbitrator when he initiated the contact with IPCO's counsel. The law in this state, as in most jurisdictions, looks upon *ex parte* proceedings with extreme disfavor. *See U.S. Government v. Marks*, 949 S.W.2d 320, 325 (Tex.1997). Judges are forbidden to "initiate, permit, or consider" *ex parte* communications except in carefully defined circumstances. TEX.CODE JUD. CONDUCT, Canon 3(B)(8), *reprinted in* TEX. GOV'T CODE ANN. tit. 2, subtit. G app. B (Vernon Supp.2001). Lawyers are also prohibited from engaging in *ex parte* communications with judges intended to influence consideration of a matter, again, except in specified instances. TEX. DISCIPLINARY R. PROF'L CONDUCT 3.05(b), *reprinted in* TEX. GOV'T CODE ANN. tit. 2, subtit. G app. A (Vernon 1998).

However, IPCO's counsel made no attempt to discontinue the *ex parte* contact, once initiated, and gave no notice of the *ex parte* contact to counsel for Chance until *after* the arbitration award was made, some weeks later. We find it disconcerting that a party who participates in *ex parte* communications with an arbitrator, would offer no disclosure and voice no complaint about such contact until after it received an adverse ruling from the arbitrator.

 We have found no Texas cases that define what conduct by an arbitrator

falls into the category of "other undue means," as that term is used in the parties' arbitration agreement and in section 171.088 of the current Texas Arbitration Act. Under the common law, an arbitration award may be set aside only if the decision appears to be tainted with (1) fraud, (2) misconduct, or (3) gross mistake as would imply bad faith and failure to exercise honest judgment. *Teleometrics Int'l*, 922 S.W.2d at 193. The parties concede the arbitrator's *ex parte* contact does not fall within the first or last of these categories. Texas courts have rarely discussed what constitutes "misconduct" sufficient to justify vacating an arbitration award under common law. At least one court of appeals has held "misconduct" does not include receiving *ex parte* affidavit testimony, but refers only to acts "evincing unfairness or contrary to all the principles of a just proceeding." *Mullinax, Wells, Baab & Cloutman, P.C. v. Sage*, 692 S.W.2d 533, 536 (Tex.App.—Dallas 1985, writ ref'd n.r.e.). To constitute "misconduct" justifying vacation of an arbitration award under Texas common law, an act must so affect the rights of a party as to deprive it of a fair hearing. *See id.*

We have reviewed the entire record, and find no evidence that the *ex parte* contact by the arbitrator so affected IPCO's rights as to deprive it of a fair hearing. IPCO's position is *not* that any *ex parte* contact renders an arbitration award automatically voidable, but that the arbitrator in this case used information conveyed in the *ex parte* contact against IPCO in rendering his award. IPCO asserts that the *only* source from which the arbitrator could have concluded "failures did not occur at other klongs" was from his telephone conversation with its counsel. We disagree. IPCO's counsel testified by affidavit he informed the arbitrator he did not know whether there were other failures, and that no evidence of such failures was in the record. Assuming such testimony is true, the only source for such a finding by the arbitrator was the evidence and argument presented by the parties at the arbitration hearing. IPCO contends no evidence was presented that there were no other failures, and that, in reaching such a conclusion, the arbitrator was essentially mistaken as to the facts of the case.[4] However, a mistake of fact is not a sufficient basis to set aside an arbitration award. *J.J. Gregory Gourmet Servs.*, 927 S.W.2d at 33. We may not reverse the award on such grounds.

Further, the "independent investigation" cases from other jurisdictions relied on by IPCO all address situations where an arbitrator, or juror, gathered evidence or conducted scientific testing independent of the presentation by the parties, and unknown to the parties. Here, the arbitrator contacted counsel for IPCO directly and requested clarifying information. The information was willingly provided by IPCO's counsel. Thus, even if the arbitrator's telephone call could arguably be called an "investigation," it certainly was not "independent." We therefore find those cases distinguishable.

We hold the *ex parte* telephone call from the arbitrator to counsel for IPCO, while improper, did not so affect IPCO's rights as to deprive it of a fair hearing, and did not constitute "undue means" such as to justify vacating the arbitration award. Accordingly, we hold the trial court did not

---

4. This statement is contradicted, to some extent, by an affidavit of Ronnie Wise, Vice President of Gregory & Cook, Inc., submitted to the trial court after the arbitration award was rendered. In his affidavit, Wise testified that anchors were used at several other klongs and did not fail. However, Wise distinguished those other locations from KP22 and KP42 as involving pipe coated with concrete, rather than bare pipe.

commit error in refusing to vacate the award on this ground. We overrule IPCO's first issue.

### Arbitrator's Refusal to Hear Additional Evidence

■■■ In its second issue, IPCO argues the trial court erred in not vacating the arbitration award on the grounds that, after the conclusion of the arbitration hearing, the arbitrator refused to hear additional evidence material to IPCO's case.

As noted above, the parties agreed to the terms of former section 171.014 of the Texas Arbitration Agreement as the bases for vacating the arbitration award. That section provided, in relevant part:

(a) Upon application of a party, the court shall vacate an award where:

. . . .

(4) the arbitrators refused to postpone the hearing upon sufficient cause being shown therefor *or refused to hear evidence material to the controversy* or otherwise so conducted the hearing ... as to prejudice substantially the rights of a party. . . .[5]

(Emphasis added.)

In section nine of their arbitration agreement, the parties addressed the manner in which they could present evidence to the arbitrator:

*Evidence.* The parties may offer such evidence as is relevant and material to the dispute and shall produce evidence as the arbitrator may deem necessary to an understanding and determination of the dispute. *The arbitrator shall be the judge of the relevance and materiality of the evidence offered, and conformity to legal rules of evidence shall not be*

*necessary. The arbitrator may request offers of proof, and may reject evidence deemed by the arbitrator to be cumulative, unreliable, unnecessary or of slight value compared to the time and expense involved.* All evidence at that arbitration hearing shall be taken in the presence of the arbitrator and all of the parties. . . .

(Emphasis added.)

After the arbitrator made his award, IPCO filed a motion to modify the award, and requested the opportunity to present additional evidence to the arbitrator. Specifically, IPCO sought to produce additional expert testimony from engineers to refute the arbitrator's conclusions, as expressed in his award, about the possible causes of the failures at KP22 and KP42. A hearing was conducted by the arbitrator on IPCO's motion to modify, but no record was made of that hearing. We therefore cannot determine what evidence or argument was presented to the arbitrator at that hearing. However, the record reflects that, prior to the hearing, the parties presented exhibits and excerpts of testimony from the arbitration hearing in support of their respective positions.

The arbitrator denied IPCO's motion to modify the award. In his order denying that motion, he states:

I have carefully considered the argument of counsel and have re-read the testimony of Butch Webb, Doctor Hebert, and Dr. Slater. It is clear to me that the wording of my opinion has caused confusion. However, after reconsideration I am satisfied with the underlying reasoning for the award I have rendered.

. . . .

---

5. Act of May 24, 1995, 74th Leg., R.S., ch. 588, § 1, 1995 Tex. Gen. Laws 3402, 3407, *repealed by*, Act of May 21, 1997, 75th Leg., R.S., ch. 165, § 5.01, 1997 Tex. Gen. Laws 327, 334.

It is the plaintiff's burden to convince the arbitrator that it is more probable than not that the cause of the failures was the breach of some duty owed by Chance. It is clear that substantial forces beyond those attributable to buoyancy uplift forces were somehow being generated at KP 22 and KP 42. We do not know the magnitude or the cause of these forces. If these forces were involved at the time of the second failure at KP 22, they were probably involved at the time of the first failure. In short, the plaintiff has failed to convince me as to the cause of the failures.

The order also stated the arbitrator "[did] not believe that further discussion of the issue will alter his understanding."

More than one month after the arbitrator denied IPCO's motion to modify the award, and before the trial court affirmed the award, IPCO presented affidavits from its counsel, as well as two of its retained testifying experts, to refute the conclusions reached by the arbitrator in the award and in the subsequent order denying IPCO's motion to modify the award.

By the terms of the parties' arbitration agreement, the arbitrator was given broad discretion in determining whether evidence was relevant and material to the dispute and in accepting or rejecting such evidence. The record reflects that, after the award was made, the arbitrator reconsidered the testimony of the parties' experts concerning the issues in dispute. Upon review of the entire record, we hold the arbitrator's decision not to allow IPCO to present further evidence did not violate the parties' arbitration agreement, and was not sufficient cause to vacate the arbitration award under the provisions of former section 171.014. Accordingly, the trial court did not commit error in refusing to vacate the award on these grounds. We overrule IPCO's second issue.

## Application of the Burden of Proof

■ In its third issue on appeal, IPCO argues the arbitrator placed an incorrect burden of proof upon it, as reflected in the award, and such incorrect application of the burden of proof constituted a "gross mistake of law" sufficient to require vacating the arbitration award.

IPCO contends the arbitrator required it not only to prove the anchor systems manufactured by Chance caused the failures at KP22 and KP42, but to also disprove all other possible causes, including IPCO's own contributory negligence. At the arbitration hearing, Chance argued its anchoring systems were not the cause of the failures, and the potential causes included installation problems such as over-torquing, side-loading, and cocking the brackets.

In his arbitration award, the arbitrator stated, in part:

My decision is based on the issue of causation.

. . . .

[T]here must have been additional significant forces involved in the second failure at KP 22. What these forces were and how they contributed to the loss was never established with sufficient certainty. Some of the possibilities include over-torquing, cocking the brackets and side loading the brackets.

At KP 42 . . . [t]here were other forces at work at this location, in addition to those mentioned above, including, among others, a major flood and construction of a road in the immediate vicinity. . . .

Therefore, it is my conclusion that the capacity of the brackets was sufficient to withstand the buoyancy up-lift forces encountered at the time of the second failure at KP 22 and at the time of the

failure at KP 42, and that *other significant forces (the cause and quantum of which was not sufficiently established) were the proximate cause of the failure.* Based on these facts and this reasoning I also conclude that design and manufacturing deficiencies, if any, were not the cause of the second failure at KP 22 or the failure at KP 42.

The first failure at KP 22 presents a greater decision making quandary.... [I]t appears on the surface that design or manufacturing problems may have contributed to the loss. However, we do not know that the only forces brought to bear on the pipeline were the buoyancy up-lift forces.... In any event, *the plaintiff has the burden of proving the cause of the failure.* Despite counsel's able efforts, that burden was not met. ....

Nevertheless, the findings I have made ... are based on the lack of persuasive and credible evidence explaining the actual mechanism of the failure.

(Emphasis added.) In his subsequent order denying IPCO's motion to modify the arbitration award, the arbitrator stated, in part:

*It is the plaintiff's burden to convince the arbitrator that it is more probable than not that the cause of the failures was the breach of some duty owed by Chance.* It is clear that substantial forces beyond those attributable to buoyancy uplift forces were somehow being generated at KP 22 and KP 42. We do not know the magnitude or the cause of these forces.... In short, *the plaintiff has failed to convince me as to the cause of the failures.*

▮▮▮ IPCO does not dispute that, as the plaintiff in this suit, it bore the burden of proving some breach of a duty owed by Chance. Although proving causation may be difficult in certain circumstances, that fact does not excuse a plaintiff from its burden of showing that the defendant's offending conduct, or allegedly defective product, was more likely than not, a substantial factor in bringing about the harm sustained. *Wal–Mart Stores, Inc. v. Gonzalez,* 968 S.W.2d 934, 937 (Tex.1998); *see also Lear Siegler, Inc. v. Perez,* 819 S.W.2d 470, 472 (Tex.1991). When the evidence is consistent with either of two facts, and nothing shows one is more probable than the other, neither can be inferred. *Litton Indus. Prods., Inc. v. Gammage,* 668 S.W.2d 319, 324 (Tex.1984).

IPCO points to the language of the arbitration award, and subsequent order, that its burden was to prove a breach of a duty owed by Chance was "the" cause of the failure imposed an unfair and incorrect burden of proof. However, it is clear from a review of the record, the arbitrator's award, and his subsequent order that he concluded there was not sufficient evidence that a defect in Chance's anchor systems was more likely than not, a substantial factor in bringing about the harm sustained. It is also evident the arbitrator concluded no one cause, or combination of causes, was more probable than another.

▮▮▮ A "gross mistake," as a common law ground for setting aside an arbitration award, is a mistake that implies bad faith or failure to exercise honest judgment. *Teleometrics Int'l,* 922 S.W.2d at 193. We must indulge every reasonable presumption in favor of upholding an arbitrator's decision, and none against it. *City of Baytown,* 886 S.W.2d at 518. We hold the arbitrator's conduct in this case in applying the burden of proof did not constitute a "gross mistake," and we hold the trial court did not commit error in refusing to vacate the arbitration award on this ground. We overrule IPCO's third issue.

We affirm the judgment.

Chief Justice SCHNEIDER, dissenting.

SCHNEIDER, Chief Justice, dissenting.

I would hold the *ex parte* contact between the arbitrator and counsel for IPCO was not only improper, but was sufficient to call into question the validity of the arbitration award, and consequently required the trial court to vacate the award. Therefore, I must respectfully dissent.

Although Texas law favors arbitration, it even more strongly favors impartial proceedings, and strongly disfavors proceedings which appear one-sided. *See U.S. Government v. Marks*, 949 S.W.2d 320, 325 (Tex.1997). As noted by the majority, *ex parte* communications between judges and counsel are prohibited by our codes of professional conduct in the strongest terms. TEX.CODE JUD. CONDUCT, Canon 3(B)(8), *reprinted in* TEX. GOV'T CODE ANN. tit. 2, subtit. G app. B (Vernon Supp.2001); TEX. DISCIPLINARY R. PROF'L CONDUCT 3.05(b), *reprinted in* TEX. GOV'T CODE ANN. tit. 2, subtit. G app. A (Vernon 1998).

While the majority acknowledges the impropriety of the *ex parte* contact in question, it does not go far enough to discourage such conduct. Whether construed as "undue means" under the Texas Arbitration Act,[1] or "misconduct" under the Texas common law,[2] an *ex parte* communication between an arbitrator and counsel for one party creates an air of impropriety which taints the entire proceeding, and, in my opinion, not only justifies but requires a trial court to vacate an arbitration award, so as to ensure the integrity of the individual proceeding before it and of the entire judicial process. Courts of appeals should not engage in a "harmless error" review of such conduct in an attempt to assess its impact on the proceedings conducted below.

Accordingly, I would grant IPCO's first issue and would hold the trial court abused its discretion in deciding not to vacate the arbitration award.

---

1. TEX. CIV. PRAC. & REM.CODE ANN. § 171.088(a)(1) (Vernon Supp.2001).

2. *See Teleometrics Int'l, Inc. v. Hall*, 922 S.W.2d 189, 193 (Tex.App.—Houston [1st Dist.] 1995, writ denied).