COURT OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-05-301-CV

 

 

PHENG INVESTMENTS, INC.,                                               APPELLANTS

PHENG PRAIRIE OAKS LTD., 

AND
SIPHAL PHENG, INDIVIDUALLY                                                       

 

                                                   V.

 

ANTHONY RODRIQUEZ,                                                        APPELLEES

PATSY RODRIQUEZ, AND 

T&P
PRAIRIE OAKS LLC                                                                        

 

                                              ------------

 

           FROM THE 342ND
DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                OPINION ON REHEARING

 

                                              ------------








After reviewing the motion to
reconsider, which we treat as a motion for rehearing, of Appellants Pheng
Investments, Inc., Pheng Prairie Oaks Ltd., and Siphal Pheng (APheng@),
Individually, we deny the motion, withdraw our April 20, 2006 opinion and
judgment, and substitute the following. 
The disposition, however, remains unchanged.

Appellants Pheng Investments,
Inc., Pheng Prairie Oaks Ltd., and Siphal Pheng (APheng@),
Individually challenge the trial court=s
judgment confirming an arbitration award for Appellees Anthony Rodriguez (ARodriguez@), Patsy
Rodriguez, and T&P Prairie Oaks LLC. 
In eight issues, Appellants complain that the trial court erred by
failing to vacate the arbitration award because the award is indefinite and
because the arbitrator exceeded his authority, committed a gross mistake,
manifestly disregarded the law, refused to hear certain evidence, and
improperly awarded attorney=s
fees.  Because we hold that there is no
evidence supporting the arbitrator=s award
to Appellees of reasonable and necessary attorney=s fees,
we modify the judgment by omitting that portion of the award.  Because we hold that the award is not
indefinite and that the arbitrator did not exceed his authority, commit a gross
mistake, or refuse to hear certain evidence, we affirm the trial court=s
judgment as modified.

I.  Factual and Procedural Background








Rodriguez sought to supplement
his retirement income by purchasing
and managing real estate property. 
Sometime in late 2003 or early 2004, Rodriguez learned that the Prairie
Oaks Apartments (APrairie Oaks@) in
Grand Prairie and the City View Apartments (ACity
View@) in
Fort Worth were for sale.  Pheng Prairie
Oaks Ltd. and Pheng Investments owned both properties.  Pheng is the president of Pheng Prairie Oaks
Ltd.

David Shaffer, Appellants= broker,
provided Rodriguez with a number of documents containing information about
Prairie Oaks, including a November 2003 rent roll (a document indicating the
vacancy rate and gross rent received each month) and three profit and loss (AP&L@)
statements covering the months of January to December 2002 and January to
October 2003.  Shaffer obtained the
documents from Pheng and represented to Rodriguez that Pheng was the owner and
seller of the properties.  The November
2003 rent roll indicated that there were only two vacancies for that month and
that the entire balance of rents owed was zero dollars.  The 2003 P&L statements showed that
Prairie Oaks netted about $6,200 per month and contained figures for gross
income, expenses, and net cash flow. 
After analyzing the numbers, Rodriguez informed Shaffer that he was
interested in the properties.

Rodriguez viewed Prairie Oaks
two timesConce by himself and later with
Shaffer and PhengCbefore signing a letter of
intent to purchase the properties on January 7, 2004.  According to Rodriguez, Pheng told him that
Prairie Oaks had about six or seven vacancies, that Prairie Oaks had passed its
inspections, and that at one point in time he had made $8,000 a month.








Based on the P&Ls and rent
rolls provided to Rodriguez and the representations made by Pheng about the
property, Rodriguez signed a purchase contract (AContract@) for
Prairie Oaks and City View for $1,142,000 on January 22, 2004.  The contract provided that the sellers would
give Rodriguez a current rent roll prior to closing, that they would deliver to
him all current leases and statements of income and expenses from 2001 through
2003, and that Rodriguez had fifteen days Aafter
receipt of all documents@ to inspect and investigate
Prairie Oaks to determine if he wanted to complete the purchase.

Rodriguez received copies of
current Prairie Oaks leases upon signing the Contract, and Shaffer gave
Rodriguez a January 29, 2004 rent roll, which showed seven vacancies, soon
after signing the Contract.  Rodriguez
was Aamazed@ at how
all the tenants had paid their rent.

Rodriguez inspected Prairie Oaks
with Pheng and Shaffer once more after signing the Contract.  They looked at six vacant units, and Pheng
claims that he told Rodriguez that he expected to have more vacancies (maybe
twelve) in the future.  According to
Pheng, Rodriguez said not to worry about the vacancies because he could fill
them with his own people.  Shaffer
recounted that Rodriguez said he Adidn=t have a
problem@ with
the vacancies.








The parties closed on Prairie
Oaks on May 11, Rodriguez received a copy of a rent roll dated May 10, 2004,
and the P&L for January to April 2004. 
The rent roll indicated that there were twelve vacancies and five late
payers. Rodriguez was Ataken aback@ because
the information previously supplied to him showed vacancy rates of about
six.  Nonetheless, Rodriguez went through
with the closing because Shaffer told him that the Contract had become Ahard@ and he
did not believe that he could get out of the Contract at that time.  After closing on Prairie Oaks, Rodriguez
visited the property and found a number of rent rolls in the desk drawer of an
office.  Rodriguez compared a January 2004
rent roll found in the desk drawer to the January 2004 rent roll provided to
him after signing the Contract and noticed that the rent rolls were
inconsistent with each other; the newly discovered rent roll indicated that
there were sixteen vacancies instead of seven. 
Rodriguez also compared P&Ls previously provided to him with
documents requested from other sources and discovered inconsistencies therein.








Rodriguez informed Shaffer that
he thought that Pheng had misrepresented some of Prairie Oaks=s
figures to him.  Rodriguez visited the
manager at City View shortly thereafter because he was under the impression
that he was bound by contract to purchase the property.  Rodriguez brought along a June rent roll that
Shaffer had provided to him and compared it to a June rent roll that Pheng had
dropped off earlier that morning at the City View office.  The rent rolls matched.  Rodriguez, however, found a different batch
of rent rolls that the office manager indicated were the true rent rolls for
City View.  The rent rolls contained
inconsistences.  Crying and visibly
upset, the office manager indicated that she was told by Pheng not to let
Rodriguez see the true rent rolls and that the rent roll provided to Rodriguez
was not accurate.  Rodriguez never closed
on City View.













Appellees sued Appellants,
alleging claims for breach of contract, statutory fraud, common law fraud,
fraudulent inducement, negligent misrepresentation, negligence, and
conspiracy.  The case proceeded to
arbitration.  The arbitrator ultimately
found, among other things, that Pheng, individually and as a corporate partner
of Pheng Prairie Oaks Ltd. and Pheng Investments, made false and misleading
statements, orally and in writing, to Appellees in order to induce them into purchasing
Prairie Oaks; that the false and fraudulent misrepresentations were made
intentionally, knowingly, and with the intent to defraud Appellees; that
Appellees reasonably and justifiedly relied upon the misrepresentations to
their detriment; and that the Appellants jointly and severally committed
malice.  The arbitrator entered an award
against Appellants for $1,145,000 plus interest and ordered complete rescission
of the Contract upon payment of the award. 
In the alternative, if Appellants failed to pay the award within sixty
days, Appellees could sell the property to a third party and credit the sales
proceeds against the award and seek only the balance of the award.  The arbitrator also awarded Appellees $50,000
in attorney=s fees and $100,000 in punitive
damages and denied Appellants= motion
to reopen evidence on rescission damages and Appellees= request
for sanctions.   Appellees filed a motion
in the trial court to confirm the award under the Texas General Arbitration Act
(ATGAA@),[1]
but Appellants opposed the motion, alleging many of the same arguments they
assert on appeal.  Appellants also filed
a counterclaim to vacate the award pursuant to the TGAA, the Federal Arbitration
Act (AFAA@),[2]
the common law, and public policy.  On
July 22, 2005, the arbitrator entered a corrected final award, adding T&P
Prairie Oaks as a plaintiff and providing that if Appellants failed to pay the
amount within ten (rather than sixty) days, Appellees could sell the apartment
to a third party and credit the sales proceeds against the award.  At the trial court=s
hearing on the motions, Appellants stated that they were not in a position to
purchase Prairie Oaks back from the Appellees and that they did not oppose
Appellees= attempt to sell the property to
a third party.  The trial court entered a
corrected final judgment on August 2, 2005, confirming the arbitration award in
all respects. This appeal followed.

II.  Corrected Final Judgment

Appellants= first
issue is procedural in nature.  They
argue that the trial court prematurely entered its corrected final judgment
confirming the arbitration award because the award is indefinite and uncertain.  Appellants reason that because the arbitrator=s final
award allows Appellees to sell Prairie Oaks to a third party and credit the
sales proceeds against the award and because (at the time of the confirmation
hearing) Appellees had located a buyer but had not yet closed, the final amount
of the award could not be determined until Prairie Oaks was sold.  We disagree. 
The award is sufficiently definite and merely provides an alternative
method of crediting the amount Appellants owe Appellees.        The award provides in relevant part,

The
Plaintiffs hereby have an Award against Pheng, Individually, Pheng Investments,
and Pheng, Ltd., jointly and [severally], in the amount of $1,145,000.00 plus
interest thereon . . . .  When paid, the
Plaintiffs shall deliver by Special Warranty Deed all possession[s] and all
rights, title, and interest to the Prairie Oaks Apartments to the Defendant
Pheng Ltd. as a complete recession of this transaction.  If the Defendants fail to pay such sum by on
or before 10 days from the date of this Award, then the Plaintiffs may sell
such apartment under commercially reasonable methods to a third party or
themselves and credit such sales proceeds against the Award and seek the
balance of the Award against the Defendants, jointly and [severally].

 








Thus, in the event Appellants failed to pay
Appellees $1,145,000.00 within ten days of the date of the award, Appellees
could then sell the property to a third party and credit the proceeds against
the award.  Appellants would then owe
Appellees the difference, if any, as damages. 
With the exception of reciting the terms of the award, Appellants do not
provide any other argument, explanation, or authority as to how and why the
award is indefinite and uncertain. 
Moreover, Appellants=
argument is moot because according to Appellees, they were ultimately unable to
sell Prairie Oaks to a third party.  The
property was foreclosed on in early December 2005 and sold for $750,000 at the
foreclosure sale.  Appellees acknowledge
that the amount owed to Appellants is offset by $750,000, the sale price of
Prairie Oaks.  Therefore, we hold that
the trial court did not err by refusing Appellants= request
to abstain from entering its corrected final judgment until Appellees sold
Prairie Oaks.  Accordingly, we overrule
Appellants= first issue.

III.  Grounds for Vacating Arbitration Award








Because Texas law favors
arbitration, our review of an arbitration decision is Aextremely
narrow.@[3]  An arbitration award has the same effect as
the judgment of a court of last resort; therefore, all reasonable presumptions
are indulged in favor of the award, and the award is conclusive on the parties
as to all matters of fact and law.[4]

For an appellate court to have
jurisdiction to review an arbitration award, the appellant must allege a
statutory or common law ground to vacate the award.[5]  The TGAA provides that the trial court must
vacate an arbitration award if

(1)
the award was obtained by corruption, fraud, or other undue means;

(2)
the rights of a party were obtained by evident partiality by an arbitrator
appointed as a neutral arbitrator, corruption in an arbitrator, or misconduct
or wilful misbehavior of an arbitrator;

(3)
the arbitrators exceeded their powers, refused to postpone the hearing after a
showing of sufficient cause for postponement, refused to hear evidence material
to the controversy, or conducted the hearing contrary to the TGAA in a manner
that substantially prejudiced the rights of a party; or

(4)
there was no agreement to arbitrate.[6]

 








Common law allows a trial court to set aside
an arbitration award Aonly if the decision is tainted
with fraud, misconduct, or gross mistake as would imply bad faith and failure
to exercise honest judgment.@[7]  Statutory arbitration is cumulative of the
common law.[8]

 

A.  Arbitrator Exceeded Powers








In their second, third, fourth,
and fifth issues, Appellants argue that the arbitrator exceeded his powers by
finding fraud, awarding rescission, holding Pheng individually liable for the
award, and awarding punitive damages.[9]  We disagree. 
The supreme court has stated that the Aauthority
of arbitrators is derived from the arbitration agreement and is limited to a
decision of the matters submitted therein either expressly or by necessary
implication.@[10]  Arbitrators therefore exceed their powers
when they decide matters not properly before them.[11]  A mistake of fact or law in the application
of substantive law is insufficient to vacate an arbitration award.[12]

Here, Appellees claim to have
received a steady stream of forged, false, and fraudulent documents.  They alleged claims for statutory fraud,
traditional fraud, and fraudulent inducement and pleaded punitive damages.  Appellees further sought a rescission of the
Contract and alleged that Pheng was individually liable for the
misrepresentations.  The Contract provides
for alternative dispute resolution.  It
states, AIf any
dispute (the ADispute@) arises
between any of the parties to this Contract . . . then any party . . . may give
written notice to the other parties requiring all involved parties to attempt
to resolve the Dispute by mediation.@  The Contract continues further down, AIf the
parties are unable to resolve any Dispute by mediation, then the parties shall
submit the Dispute to binding arbitration . . . .  The Dispute will be decided by arbitration
. . . .@ 
[Emphasis added.]








The arbitrator decided matters
that were properly before him because the arbitration clause is broad, and
there is an absence of limiting language. 
The Contract gave the arbitrator the authority to decide the matters
submitted to him, including the issues of fraud, rescission, individual
liability, and punitive damages.[13]  Appellants do not complain that the
arbitrator decided an issue outside the scope of his powers, thus exceeding his
authority, but that he merely decided an issue incorrectly.  A complaint that the evidence does not
support the arbitrator=s award, however, is not a
complaint that the arbitrator exceeded his powers.  The arbitrator may have made a mistake of
fact or law,

but he did not exceed his authority by
deciding a matter not properly before him.[14]  Accordingly, we overrule Appellants= second,
third, fourth, and fifth issues to the extent that Appellants argue that the
arbitrator exceeded his authority by finding fraud, awarding rescission,
holding Pheng individually liable for the award, and awarding punitive damages.

B.  Gross Mistake








In their second, third, fourth,
and fifth issues, Appellants also argue that the arbitrator was arbitrary and capricious
and that he committed a gross mistake by finding fraud, awarding rescission,
holding Pheng individually liable for the award, and awarding punitive
damages.  A gross mistake is a mistake
that implies bad faith or failure to exercise honest judgment.[15]  A gross mistake results in a decision that is
arbitrary and capricious.[16]  The party seeking to vacate an arbitration
award has the burden of demonstrating how the arbitrator made a gross mistake.[17]













Assuming that Appellants may
rely on the common law=s gross mistake standard in
attempting to set aside the trial court=s
confirmation of the arbitrator=s award,[18]
Appellees offered evidence on the issues of fraud and individual liability, and
they made a demand for rescission in their pleadings.  During the arbitration, the arbitrator made
detailed rulings and evidenced an attempt to justly apply the applicable rules
and law in a fair hearing.  Indeed, the
corrected final award states, AAfter
considering the pleadings, testimony and documentary evidence, and arguments of
the parties and attorneys, I have determined the credibility of the witnesses,
the facts of the case, and the application of the law.@  The Agross
mistake@ that
Appellants complain of is not a mistake Aas would
imply bad faith and failure to exercise honest judgment.@[19]  Instead, Appellants once again attack the
arbitrator=s decisions regarding fraud,
rescission, individual liability, and punitive damages by asserting what amount
to evidentiary sufficiency arguments. 
Appellants argue that Appellees Afailed
to present any evidence to hold Siphal Pheng individually liable,@ that
Appellees Afailed to prove that
Siphal Pheng caused the limited partnership and corporation to be used for the
purpose of perpetuating . . . an actual fraud on the Appellees,@ that
Rodriguez Adid not present any evidence that the
Appellants told him he was legally required to go through with the closing,@ and
that the Appellees Afailed to carry their burden of
proving@
rescission.  [Emphasis added.]  An honest judgment made after due
consideration given to conflicting claims, no matter how erroneous, is not
arbitrary or capricious.[20]  Appellants have not pointed to any evidence
that the arbitrator acted with bad faith or failed to exercise honest judgment
or that the award he entered is arbitrary or capricious.  Therefore, Appellants have not met their
burden of demonstrating how the arbitrator acted in bad faith or exercised
dishonest judgment.[21]  Accordingly, we overrule Appellant=s
second, third, fourth, and fifth issues to the extent that they argue that the
arbitrator committed gross mistake by finding fraud, awarding rescission,
holding Pheng individually liable for the award, and awarding punitive damages.

C.  Manifest Disregard of the Law

In their second, third, fourth,
and fifth issues, Appellants further argue that the arbitrator manifestly
disregarded the law by finding fraud, awarding rescission, holding Pheng
individually liable for the award, and awarding punitive damages.  Appellants sought to vacate the arbitration
award in their second amended counterclaim pursuant to the TGAA and FAA and on
common law and public policy grounds. 
Appellees confirm that AAppellants
have correctly listed the provisions@ in the
TGAA and the FAA and the public policy grounds for vacating an arbitration
award.  We shall therefore address
Appellants= manifest disregard of the law
argument.[22]








Manifest disregard of the law is
a judicially-created ground for vacating arbitration awards.[23]  It is more than mere error or
misunderstanding in applying

the law.[24]  Under this standard, the arbitrator clearly
recognizes the law but chooses to ignore it or refuses to apply it correctly.[25]  A court=s review
for manifest disregard of the law is Aextremely
limited@ and Adoes not
open the door to extensive judicial review.@[26]  The party seeking to vacate an arbitration
award bears the burden of demonstrating that the arbitration panel acted in
manifest disregard of the law.[27]








Here, Appellants do not direct
us to any specific evidence that the arbitrator chose to ignore the applicable
law or refused to apply it.  The
arbitrator=s findings indicate that he
recognized the applicable law and applied it. 
The arbitrator found that Appellants made false and misleading
statements to induce Appellees to purchase Prairie Oaks, that Appellees
reasonably relied on the representations to their detriment, that the
representations were material, and that Appellees would not have purchased
Prairie Oaks but for the representations. 
The arbitrator found that Pheng acted individually and as a corporate
and partner representative of Pheng Prairie Oaks Ltd. and Pheng Investments and
that APheng
Ltd. and Pheng Investments by and through their officer, Defendant Pheng, and
Defendant Pheng, Individually, acted intentionally with malice and deceit to
intentionally create a false and misleading impression, understanding, and
belief that the apartments were profitable.@  Appellees pleaded rescission in their third
amended petition, and the arbitrator entered an award against Appellants for
$1,145,000 and ordered complete rescission of the Contract upon payment of the
award.








The true substance of Appellants=
manifest disregard of the law argument is that the evidence is insufficient to
support the arbitrator=s finding of fraud and
individual liability and award of rescission and punitive damages.  But this is not an appropriate argument under
the manifest disregard standard of review.[28]  The Aissue is
not whether the arbitrator correctly interpreted the law, but whether the
arbitrator, knowing the law and recognizing that the law required a particular
result, simply disregarded the law.@[29]  Under our Aextremely
limited@ review,
Appellants have not met their burden of demonstrating that the arbitrator
manifestly disregarded the law. 
Accordingly, we overrule Appellants= second,
third, and fourth issues.  We overrule
their fifth issue to the extent that they argue that the arbitrator manifestly
disregard the law by awarding punitive damages.

D.  Public Policy

In their fifth issue, Appellants
further complain that the award of punitive damages is contrary to public
policy because it is not supported by clear and convincing evidence.  Appellants provide no authority or argument
in support of this assertion. 
Consequently, they have forfeited appellate review of this argument.[30]

E.  Refusal to Hear Evidence








In their seventh issue,
Appellants argue that the arbitrator refused to hear evidence concerning
rescission.[31]  Appellants filed a motion to reopen the
evidence on rescission damages in order to offer evidence of emails allegedly
showing that the Appellees waived their claim of rescission.  They argue that the arbitrator should have
considered the emails because Appellees=
election of rescission during closing arguments came as a surprise to
them.  The arbitrator=s
corrected final award, however, states, ADefendants= motion
to reopen evidence and allow the introduction into evidence [of] the
correspondence set out in Defendants=
Supplemental Post-Arbitration Brief and Motion to Reopen Evidence on Rescission
Damages is DENIED.  The documents were
not for a rescission, but only for partial offer to settle.@  Thus, although the arbitrator denied
Appellants= motion to reopen evidence, he
nevertheless considered the evidence.  We
overrule Appellants= seventh issue.

In their eighth issue,
Appellants argue that the arbitrator refused to hear evidence material to
punitive damages.[32]  They claim that the arbitrator bifurcated the
issue of punitive damages and that he never proceeded to the second stage of
the arbitration to consider evidence relevant to punitive damages.  Appellants fail to cite in the record where
the arbitrator made a decision to bifurcate the issue of punitive damages,[33]
and after conducting our own search, we have found no evidence that the
arbitrator bifurcated the punitive damages evidence.  We overrule Appellants= eighth
issue.

IV.  Attorney=s Fees








In their sixth issue, Appellants
argue that the arbitrator=s award of attorney=s fees
to Appellees was improper because Appellees presented no evidence that the fees
were reasonable and necessary.  We agree.

An arbitrator shall award
attorney=s fees
as additional sums required to be paid under the award only if the fees are
provided for (1) in the agreement to arbitrate or (2) by law for a recovery in
a civil action in the district court on a cause of action on which any part of
the award is based.[34]

The Contract provided that A[t]he
prevailing party in any legal proceeding brought in relation to this Contract
or transaction will be entitled to recover from the non-prevailing parties . .
. reasonable attorneys fees . . . .@  [Emphasis added.]  The award states that A[Appellees]
have incurred attorney=s fees in the amount of
$75,000.00, of which the Arbitrator finds $50,000 to be reasonable and
necessary for the services rendered and the difficulty of the case involved
in the matter at hand.@ 
[Emphasis added.]








Appellees argue that they were
entitled to recover attorney=s fees
under Section 38.001(8) of the civil practice and remedies code, which allows
recovery of attorney=s fees in cause of action
involving oral or written contracts.[35]  Appellees also direct us to Section 38.004,
which provides that A[t]he court may take judicial
notice of the usual and customary attorney=s fees
and of the contents of the case file without receiving further evidence.@[36]  But the Arbitrator=s award
was based on Afraudulent and false
misrepresentations@ made with Amalice,@ not on
Appellants= breach of contract claim.  Therefore, the Arbitrator could not take judicial
notice of attorney=s fees under Section 38.[37]








Appellees also argue that they
are entitled to recover attorney=s fees
under Section 27.01(e) of the business and commerce code, which permits
recovery of reasonable and necessary attorney=s fees
in cases involving fraud in real estate and stock transactions.[38]  However, unlike Section 38.004, Section
27.01(e) does not provide for judicial notice of attorney=s
fees.  Appellees were thus required to
present evidence demonstrating that their attorney=s fees
were reasonable and necessary.  Although
Appellees presented their attorney=s
billing statements as evidence, there was no evidence that the fees were
reasonable and necessary.  We therefore
sustain Appellants= sixth issue.

 

 

 

V.  Conclusion

Having sustained Appellants= issue
regarding attorney=s fees, we modify the trial
court=s
judgment to omit that portion of the award. 
Having disposed of all other issues on appeal, we affirm the trial court=s
judgment as modified.[39]

 

 

LEE ANN DAUPHINOT

JUSTICE

PANEL B:   LIVINGSTON, DAUPHINOT, and HOLMAN, JJ.

DELIVERED: 
June 1, 2006











[1]See Tex. Civ. Prac. & Rem. Code Ann. '' 171.001-.098 (Vernon 2005).





[2]9 U.S.C.A. '' 1-16 (West 1999).





[3]Hisaw & Assocs. Gen. Contractors, Inc. v. Cornerstone Concrete Sys., Inc.,
115 S.W.3d 16, 18 (Tex. App.CFort Worth 2003, pet. denied); IPCO-G. & C.
Joint Venture v. A.B. Chance Co., 65 S.W.3d 252, 255-56 (Tex. App.CHouston
[1st Dist.] 2001, pet. denied).





[4]CVN Group, Inc.
v. Delgado, 95 S.W.3d 234, 238 (Tex. 2002); Anzilotti v. Gene D. Liggin,
Inc., 899 S.W.2d 264, 266 (Tex. App.CHouston [14th Dist.] 1995, no writ).





[5]Hisaw & Assocs., 115 S.W.3d at 19.





[6]Tex. Civ. Prac. & Rem.
Code Ann. ' 171.088(a).





[7]IPCO-G. & C. Joint Venture, 65 S.W.3d at 256.





[8]J.J. Gregory Gourmet Servs. v. Antone=s
Import Co., 927 S.W.2d 31, 33 (Tex.
App.CHouston [1st Dist.] 1995, no writ).





[9]See Tex. Civ. Prac. & Rem. Code Ann. ' 171.088(a)(3)(A).





[10]Gulf Oil Corp. v. Guidry, 160 Tex. 139, 143, 327 S.W.2d 406, 408 (1959).





[11]Barsness v. Scott, 126 S.W.3d 232, 241 (Tex. App.CSan Antonio 2003, pet. denied).





[12]Vernon E. Faulconer, Inc. v. HFI, Ltd. P=ship, 970
S.W.2d 36, 39 (Tex. App.CTyler 1998, no pet.); J.J. Gregory Gourmet Servs.,
927 S.W.2d at 33.





[13]See Kline v. O=Quinn, 874
S.W.2d 776, 782 (Tex. App.CHouston [14th Dist.] 1994, writ denied) (holding that
an agreement to arbitrate Aa dispute that arises among the parties@
encompasses a claim for punitive damages).





[14]See Action Box Co., Inc., v. Panel Prints, Inc., 130 S.W.3d 249,
251-52 (Tex. App.CHouston [14th Dist.] 2004, no pet.) (holding that
arbitrator did not exceed his powers); Air Force Village Found., Inc.,
v. Asbury, No. 04-03-00373-CV, 2004 WL 1453460, at *3 (Tex. App.CSan
Antonio June 30, 2004, no pet.) (same); see also Hisaw & Assocs.,
115 S.W.3d at 20 (same).





[15]IPCO-G. & C. Joint Venture, 65 S.W.3d at 261.





[16]Bailey & Williams v. Westfall, 727 S.W.2d 86, 90 (Tex. App.CDallas
1987, writ ref=d n.r.e.).





[17]Anzilotti,
899 S.W.2d at 267.





[18]See Universal Computer Sys. Inc. v. Dealer Solutions, L.L.C., 2005 WL 3118707, at *7-8 (Tex. App.CHouston
[1st Dist.] Nov. 23, 2005, pet. filed) (examining interplay of common law=s gross
mistake standard and the TGAA=s grounds for vacating arbitration award).





[19]See IPCO-G. & C. Joint Venture, 65 S.W.3d at 261.





[20]Bailey, 727
S.W.2d at 90; Grand Int=l Bhd. of Locomotive Eng=rs
v. Wilson, 341 S.W.2d 206, 211 (Tex.
Civ. App.CFort Worth 1960, writ ref=d
n.r.e.).





[21]See Anzilotti,
899 S.W.2d at 267.





[22]Cf. Action Box Co., Inc., 130 S.W.3d 249, 251-52 (Tex. App.CHouston
[14th Dist.] 2004, no pet.) (declining to address appellant=s
manifest disregard of the law argument because no allegation that the FAA
applied to the case).





[23]Homes v. Cull,
173 S.W.3d 565, 572 (Tex. App.CFort Worth 2005, pet. filed); Tanox, Inc. v.
Akin, Gump, Strauss, Hauer & Feld, L.L.P.,
105 S.W.3d 244, 252 (Tex. App.CHouston [14th Dist.] 2003, pet. denied).





[24]Cull, 173
S.W.3d at 572.





[25]Id.; Tanox,
105 S.W.3d at 252-53.





[26]Tanox, 105
S.W.3d at 253.





[27]Cull, 173
S.W.3d at 572-73.





[28]See Cull,
173 S.W.3d at 572-73.





[29]Bohlmann v. Byron John Printz and Ash, Inc., 120 Nev. 543, C, 96
P.3d 1155, 1158 (2004).





[30]See Tex. R. App. P.
38.1(h).





[31]See Tex.
Civ. Prac. & Rem. Code Ann. ' 171.088(a)(3)(C).





[32]See id.





[33]See Tex. R. App. P.
38.1(h) (requiring record references in the argument).





[34]Tex. Civ. Prac. & Rem.
Code Ann. ' 171.048(c)(2).





[35]Id. '
38.001(8) (Vernon 1997).





[36]Id. ' 38.004.





[37]See Hasty,
Inc. v. Inwood Buckhorn Joint Venture, 908 S.W.2d 494, 503 (Tex. App.CDallas
1995, writ denied) (AWhen a claim for fees does not fall under section
38.001, the trial court may not take judicial notice of attorney=s fees.@).





[38]See Tex. Bus. & Comm. Code ' 27.01(a) (Vernon 2002).





[39]See Tex. R. App. P.
43.2(b).