**PHENG INVESTMENTS, INC., Pheng Prairie Oaks Ltd., and Siphal Pheng, Individually, Appellants,**

v.

**Anthony RODRIQUEZ, Patsy Rodriquez, and T & P Prairie Oaks LLC, Appellees.**

No. 2–05–301–CV.

Court of Appeals of Texas, Fort Worth.

June 1, 2006.

ing, of Appellants Pheng Investments, Inc., Pheng Prairie Oaks Ltd., and Siphal Pheng ("Pheng"), Individually, we deny the motion, withdraw our April 20, 2006 opinion and judgment, and substitute the following. The disposition, however, remains unchanged.

Appellants Pheng Investments, Inc., Pheng Prairie Oaks Ltd., and Siphal Pheng ("Pheng"), Individually challenge the trial court's judgment confirming an arbitration award for Appellees Anthony Rodriguez ("Rodriguez"), Patsy Rodriguez, and T & P Prairie Oaks LLC. In eight issues, Appellants complain that the trial court erred by failing to vacate the arbitration award because the award is indefinite and because the arbitrator exceeded his authority, committed a gross mistake, manifestly disregarded the law, refused to hear certain evidence, and improperly awarded attorney's fees. Because we hold that there is no evidence supporting the arbitrator's award to Appellees of reasonable and necessary attorney's fees, we modify the judgment by omitting that portion of the award. Because we hold that the award is not indefinite and that the arbitrator did not exceed his authority, commit a gross mistake, or refuse to hear certain evidence, we affirm the trial court's judgment as modified.

Gerard Singer Levick & Busch, P.C., Robert Ruotolo, Addison, for appellants.

Craddock, Reneker & Davis, LLP, David C. Routzon, Jr., Dallas, for appellees.

PANEL B: LIVINGSTON, DAUPHINOT, and HOLMAN, JJ.

### OPINION ON REHEARING

LEE ANN DAUPHINOT, Justice.

After reviewing the motion to reconsider, which we treat as a motion for rehear-

## I. FACTUAL AND PROCEDURAL BACKGROUND

Rodriguez sought to supplement his retirement income by purchasing and managing real estate property. Sometime in late 2003 or early 2004, Rodriguez learned that the Prairie Oaks Apartments ("Prairie Oaks") in Grand Prairie and the City View Apartments ("City View") in Fort Worth were for sale. Pheng Prairie Oaks Ltd. and Pheng Investments owned both properties. Pheng is the president of Pheng Prairie Oaks Ltd.

David Shaffer, Appellants' broker, provided Rodriguez with a number of documents containing information about Prairie Oaks, including a November 2003 rent roll (a document indicating the vacancy rate and gross rent received each month) and three profit and loss ("P & L") statements covering the months of January to December 2002 and January to October 2003. Shaffer obtained the documents from Pheng and represented to Rodriguez that Pheng was the owner and seller of the properties. The November 2003 rent roll indicated that there were only two vacancies for that month and that the entire balance of rents owed was zero dollars. The 2003 P & L statements showed that Prairie Oaks netted about $6,200 per month and contained figures for gross income, expenses, and net cash flow. After analyzing the numbers, Rodriguez informed Shaffer that he was interested in the properties.

Rodriguez viewed Prairie Oaks two times—once by himself and later with Shaffer and Pheng—before signing a letter of intent to purchase the properties on January 7, 2004. According to Rodriguez, Pheng told him that Prairie Oaks had about six or seven vacancies, that Prairie Oaks had passed its inspections, and that at one point in time he had made $8,000 a month.

Based on the P & Ls and rent rolls provided to Rodriguez and the representations made by Pheng about the property, Rodriguez signed a purchase contract ("Contract") for Prairie Oaks and City View for $1,142,000 on January 22, 2004. The contract provided that the sellers would give Rodriguez a current rent roll prior to closing, that they would deliver to him all current leases and statements of income and expenses from 2001 through 2003, and that Rodriguez had fifteen days "after receipt of all documents" to inspect and investigate Prairie Oaks to determine if he wanted to complete the purchase.

Rodriguez received copies of current Prairie Oaks leases upon signing the Contract, and Shaffer gave Rodriguez a January 29, 2004 rent roll, which showed seven vacancies, soon after signing the Contract. Rodriguez was "amazed" at how all the tenants had paid their rent.

Rodriguez inspected Prairie Oaks with Pheng and Shaffer once more after signing the Contract. They looked at six vacant units, and Pheng claims that he told Rodriguez that he expected to have more vacancies (maybe twelve) in the future. According to Pheng, Rodriguez said not to worry about the vacancies because he could fill them with his own people. Shaffer recounted that Rodriguez said he "didn't have a problem" with the vacancies.

The parties closed on Prairie Oaks on May 11, Rodriguez received a copy of a rent roll dated May 10, 2004, and the P & L for January to April 2004. The rent roll indicated that there were twelve vacancies and five late payers. Rodriguez was "taken aback" because the information previously supplied to him showed vacancy rates of about six. Nonetheless, Rodriguez went through with the closing because Shaffer told him that the Contract had become "hard" and he did not believe that he could get out of the Contract at that time. After closing on Prairie Oaks, Rodriguez visited the property and found a number of rent rolls in the desk drawer of an office. Rodriguez compared a January 2004 rent roll found in the desk drawer to the January 2004 rent roll provided to him after signing the Contract and noticed that the rent rolls were inconsistent with each other; the newly discovered rent roll indicated that there were sixteen vacancies instead of seven. Rodriguez also compared P & Ls previously provided to him with documents requested from other

sources and discovered inconsistencies therein.

Rodriguez informed Shaffer that he thought that Pheng had misrepresented some of Prairie Oaks's figures to him. Rodriguez visited the manager at City View shortly thereafter because he was under the impression that he was bound by contract to purchase the property. Rodriguez brought along a June rent roll that Shaffer had provided to him and compared it to a June rent roll that Pheng had dropped off earlier that morning at the City View office. The rent rolls matched. Rodriguez, however, found a different batch of rent rolls that the office manager indicated were the true rent rolls for City View. The rent rolls contained inconsistencies. Crying and visibly upset, the office manager indicated that she was told by Pheng not to let Rodriguez see the true rent rolls and that the rent roll provided to Rodriguez was not accurate. Rodriguez never closed on City View.

Appellees sued Appellants, alleging claims for breach of contract, statutory fraud, common law fraud, fraudulent inducement, negligent misrepresentation, negligence, and conspiracy. The case proceeded to arbitration. The arbitrator ultimately found, among other things, that Pheng, individually and as a corporate partner of Pheng Prairie Oaks Ltd. and Pheng Investments, made false and misleading statements, orally and in writing, to Appellees in order to induce them into purchasing Prairie Oaks; that the false and fraudulent misrepresentations were made intentionally, knowingly, and with the intent to defraud Appellees; that Appellees reasonably and justifiedly relied upon the misrepresentations to their detriment; and that the Appellants jointly and severally committed malice. The arbitrator entered an award against Appellants for $1,145,000 plus interest and ordered complete rescission of the Contract upon payment of the award. In the alternative, if Appellants failed to pay the award within sixty days, Appellees could sell the property to a third party and credit the sales proceeds against the award and seek only the balance of the award. The arbitrator also awarded Appellees $50,000 in attorney's fees and $100,000 in punitive damages and denied Appellants' motion to reopen evidence on rescission damages and Appellees' request for sanctions.

Appellees filed a motion in the trial court to confirm the award under the Texas General Arbitration Act ("TGAA"),[1] but Appellants opposed the motion, alleging many of the same arguments they assert on appeal. Appellants also filed a counterclaim to vacate the award pursuant to the TGAA, the Federal Arbitration Act ("FAA"),[2] the common law, and public policy. On July 22, 2005, the arbitrator entered a corrected final award, adding T & P Prairie Oaks as a plaintiff and providing that if Appellants failed to pay the amount within ten (rather than sixty) days, Appellees could sell the apartment to a third party and credit the sales proceeds against the award. At the trial court's hearing on the motions, Appellants stated that they were not in a position to purchase Prairie Oaks back from the Appellees and that they did not oppose Appellees' attempt to sell the property to a third party. The trial court entered a corrected final judgment on August 2, 2005, confirming the arbitration award in all respects. This appeal followed.

## II. CORRECTED FINAL JUDGMENT

Appellants' first issue is procedural in nature. They argue that the trial court

1. *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 171.001–.098 (Vernon 2005).

2. 9 U.S.C.A. §§ 1–16 (West 1999).

prematurely entered its corrected final judgment confirming the arbitration award because the award is indefinite and uncertain. Appellants reason that because the arbitrator's final award allows Appellees to sell Prairie Oaks to a third party and credit the sales proceeds against the award and because (at the time of the confirmation hearing) Appellees had located a buyer but had not yet closed, the final amount of the award could not be determined until Prairie Oaks was sold. We disagree. The award is sufficiently definite and merely provides an alternative method of crediting the amount Appellants owe Appellees.

■■■ The award provides in relevant part,

> The Plaintiffs hereby have an Award against Pheng, Individually, Pheng Investments, and Pheng, Ltd., jointly and [severally], in the amount of $1,145,000.00 plus interest thereon.... When paid, the Plaintiffs shall deliver by Special Warranty Deed all possession[s] and all rights, title, and interest to the Prairie Oaks Apartments to the Defendant Pheng Ltd. as a complete recession of this transaction. If the Defendants fail to pay such sum by on or before 10 days from the date of this Award, then the Plaintiffs may sell such apartment under commercially reasonable methods to a third party or themselves and credit such sales proceeds against the Award and seek the balance of the Award against the Defendants, jointly and [severally].

Thus, in the event Appellants failed to pay Appellees $1,145,000.00 within ten days of

the date of the award, Appellees could then sell the property to a third party and credit the proceeds against the award. Appellants would then owe Appellees the difference, if any, as damages. With the exception of reciting the terms of the award, Appellants do not provide any other argument, explanation, or authority as to how and why the award is indefinite and uncertain. Moreover, Appellants' argument is moot because according to Appellees, they were ultimately unable to sell Prairie Oaks to a third party. The property was foreclosed on in early December 2005 and sold for $750,000 at the foreclosure sale. Appellees acknowledge that the amount owed to Appellants is offset by $750,000, the sale price of Prairie Oaks. Therefore, we hold that the trial court did not err by refusing Appellants' request to abstain from entering its corrected final judgment until Appellees sold Prairie Oaks. Accordingly, we overrule Appellants' first issue.

### III. Grounds for Vacating Arbitration Award

■■■ Because Texas law favors arbitration, our review of an arbitration decision is "extremely narrow."[3] An arbitration award has the same effect as the judgment of a court of last resort; therefore, all reasonable presumptions are indulged in favor of the award, and the award is conclusive on the parties as to all matters of fact and law.[4]

■■■ For an appellate court to have jurisdiction to review an arbitration award, the appellant must allege a statutory or

3. *Hisaw & Assocs. Gen. Contractors, Inc. v. Cornerstone Concrete Sys., Inc.,* 115 S.W.3d 16, 18 (Tex.App.-Fort Worth 2003, pet. denied); *IPCO–G. & C. Joint Venture v. A.B. Chance Co.,* 65 S.W.3d 252, 255–56 (Tex.App.-Houston [1st Dist.] 2001, pet. denied).

4. *CVN Group, Inc. v. Delgado,* 95 S.W.3d 234, 238 (Tex.2002); *Anzilotti v. Gene D. Liggin, Inc.,* 899 S.W.2d 264, 266 (Tex. App.-Houston [14th Dist.] 1995, no writ).

common law ground to vacate the award.[5] The TGAA provides that the trial court must vacate an arbitration award if

(1) the award was obtained by corruption, fraud, or other undue means;

(2) the rights of a party were obtained by evident partiality by an arbitrator appointed as a neutral arbitrator, corruption in an arbitrator, or misconduct or wilful misbehavior of an arbitrator;

(3) the arbitrators exceeded their powers, refused to postpone the hearing after a showing of sufficient cause for postponement, refused to hear evidence material to the controversy, or conducted the hearing contrary to the TGAA in a manner that substantially prejudiced the rights of a party; or

(4) there was no agreement to arbitrate.[6]

Common law allows a trial court to set aside an arbitration award "only if the decision is tainted with fraud, misconduct, or gross mistake as would imply bad faith and failure to exercise honest judgment."[7] Statutory arbitration is cumulative of the common law.[8]

## A. Arbitrator Exceeded Powers

In their second, third, fourth, and fifth issues, Appellants argue that the arbitrator exceeded his powers by finding fraud, awarding rescission, holding Pheng individually liable for the award, and awarding punitive damages.[9] We disagree. The supreme court has stated that the "authority of arbitrators is derived from the arbitration agreement and is limited to a decision of the matters submitted therein either expressly or by necessary implication."[10] Arbitrators therefore exceed their powers when they decide matters not properly before them.[11] A mistake of fact or law in the application of substantive law is insufficient to vacate an arbitration award.[12]

Here, Appellees claim to have received a steady stream of forged, false, and fraudulent documents. They alleged claims for statutory fraud, traditional fraud, and fraudulent inducement and pleaded punitive damages. Appellees further sought a rescission of the Contract and alleged that Pheng was individually liable for the misrepresentations. The Contract provides for alternative dispute resolution. It states, "If any dispute (the "Dispute") arises between any of the parties to this Contract ... then any party ... may give written notice to the other parties requiring all involved parties to attempt to resolve the Dispute by mediation." The Contract continues further down, "If the parties are unable to resolve any Dispute by mediation, then the parties shall submit the Dispute to *binding arbitration .... The Dispute will be decided by arbitration.* ..." [Emphasis added.]

The arbitrator decided matters that were properly before him because the

**5.** *Hisaw & Assocs.,* 115 S.W.3d at 19.

**6.** Tex. Civ. Prac. & Rem.Code Ann. § 171.088(a).

**7.** *IPCO–G. & C. Joint Venture,* 65 S.W.3d at 256.

**8.** *J.J. Gregory Gourmet Servs. v. Antone's Import Co.,* 927 S.W.2d 31, 33 (Tex.App.-Houston [1st Dist.] 1995, no writ).

**9.** *See* Tex. Civ. Prac. & Rem.Code Ann. § 171.088(a)(3)(A).

**10.** *Gulf Oil Corp. v. Guidry,* 160 Tex. 139, 143, 327 S.W.2d 406, 408 (1959).

**11.** *Barsness v. Scott,* 126 S.W.3d 232, 241 (Tex.App.-San Antonio 2003, pet. denied).

**12.** *Vernon E. Faulconer, Inc. v. HFI, Ltd. P'ship,* 970 S.W.2d 36, 39 (Tex.App.-Tyler 1998, no pet.); *J.J. Gregory Gourmet Servs.,* 927 S.W.2d at 33.

arbitration clause is broad, and there is an absence of limiting language. The Contract gave the arbitrator the authority to decide the matters submitted to him, including the issues of fraud, rescission, individual liability, and punitive damages.[13] Appellants do not complain that the arbitrator decided an issue outside the scope of his powers, thus exceeding his authority, but that he merely decided an issue incorrectly. A complaint that the evidence does not support the arbitrator's award, however, is not a complaint that the arbitrator exceeded his powers. The arbitrator may have made a mistake of fact or law, but he did not exceed his authority by deciding a matter not properly before him.[14] Accordingly, we overrule Appellants' second, third, fourth, and fifth issues to the extent that Appellants argue that the arbitrator exceeded his authority by finding fraud, awarding rescission, holding Pheng individually liable for the award, and awarding punitive damages.

### B. Gross Mistake

In their second, third, fourth, and fifth issues, Appellants also argue that the arbitrator was arbitrary and capricious and that he committed a gross mistake by finding fraud, awarding rescission, holding Pheng individually liable for the award, and awarding punitive damages. A gross mistake is a mistake that implies bad faith or failure to exercise honest judgment.[15] A gross mistake results in a decision that is arbitrary and capricious.[16] The party seeking to vacate an arbitration award has the burden of demonstrating how the arbitrator made a gross mistake.[17]

Assuming that Appellants may rely on the common law's gross mistake standard in attempting to set aside the trial court's confirmation of the arbitrator's award,[18] Appellees offered evidence on the issues of fraud and individual liability, and they made a demand for rescission in their pleadings. During the arbitration, the arbitrator made detailed rulings and evidenced an attempt to justly apply the applicable rules and law in a fair hearing. Indeed, the corrected final award states, "After considering the pleadings, testimony and documentary evidence, and arguments of the parties and attorneys, I have determined the credibility of the witnesses, the facts of the case, and the application of the law." The "gross mistake" that Appellants complain of is not a mistake "as would imply bad faith and failure to exercise honest judgment."[19] Instead, Appellants once again attack the arbitrator's decisions regarding fraud, rescission, indi-

---

13. See *Kline v. O'Quinn,* 874 S.W.2d 776, 782 (Tex.App.-Houston [14th Dist.] 1994, writ denied) (holding that an agreement to arbitrate "a dispute that arises among the parties" encompasses a claim for punitive damages).

14. See *Action Box Co., Inc., v. Panel Prints, Inc.,* 130 S.W.3d 249, 251–52 (Tex.App.-Houston [14th Dist.] 2004, no pet.) (holding that arbitrator did not exceed his powers); *Air Force Village Found., Inc., v. Asbury,* No. 04–03–00373–CV, 2004 WL 1453460, at *3 (Tex.App.-San Antonio June 30, 2004, no pet.) (same); *see also Hisaw & Assocs.,* 115 S.W.3d at 20 (same).

15. *IPCO–G. & C. Joint Venture,* 65 S.W.3d at 261.

16. *Bailey & Williams v. Westfall,* 727 S.W.2d 86, 90 (Tex.App.-Dallas 1987, writ ref'd n.r.e.).

17. *Anzilotti,* 899 S.W.2d at 267.

18. See *Universal Computer Sys. Inc. v. Dealer Solutions, L.L.C.,* 183 S.W.3d 741, 750–52 (Tex.App.-Houston [1st Dist.] 2005, pet. filed) (examining interplay of common law's gross mistake standard and the TGAA's grounds for vacating arbitration award).

19. See *IPCO–G. & C. Joint Venture,* 65 S.W.3d at 261.

vidual liability, and punitive damages by asserting what amount to evidentiary sufficiency arguments. Appellants argue that Appellees *"failed to present any evidence* to hold Siphal Pheng individually liable," that Appellees *"failed to prove* that Siphal Pheng caused the limited partnership and corporation to be used for the purpose of perpetuating ... an actual fraud on the Appellees," that Rodriguez *"did not present any evidence* that the Appellants told him he was legally required to go through with the closing," and that the Appellees *"failed to carry their burden* of proving" rescission. [Emphasis added.] An honest judgment made after due consideration given to conflicting claims, no matter how erroneous, is not arbitrary or capricious.[20] Appellants have not pointed to any evidence that the arbitrator acted with bad faith or failed to exercise honest judgment or that the award he entered is arbitrary or capricious. Therefore, Appellants have not met their burden of demonstrating how the arbitrator acted in bad faith or exercised dishonest judgment.[21] Accordingly, we overrule Appellant's second, third, fourth, and fifth issues to the extent that they argue that the arbitrator committed gross mistake by finding fraud, awarding rescission, holding Pheng individually liable for the award, and awarding punitive damages.

## C. Manifest Disregard of the Law

In their second, third, fourth, and fifth issues, Appellants further argue that the arbitrator manifestly disregarded the law by finding fraud, awarding rescission, holding Pheng individually liable for the award, and awarding punitive damages. Appellants sought to vacate the arbitration award in their second amended counterclaim pursuant to the TGAA and FAA and on common law and public policy grounds. Appellees confirm that "Appellants have correctly listed the provisions" in the TGAA and the FAA and the public policy grounds for vacating an arbitration award. We shall therefore address Appellants' manifest disregard of the law argument.[22]

Manifest disregard of the law is a judicially-created ground for vacating arbitration awards.[23] It is more than mere error or misunderstanding in applying the law.[24] Under this standard, the arbitrator clearly recognizes the law but chooses to ignore it or refuses to apply it correctly.[25] A court's review for manifest disregard of the law is "extremely limited" and "does not open the door to extensive judicial review."[26] The party seeking to vacate an arbitration award bears the burden of demonstrating that the arbitration panel acted in manifest disregard of the law.[27]

Here, Appellants do not direct us to any specific evidence that the arbitrator chose to ignore the applicable law or refused to apply it. The arbitrator's findings indicate

20. *Bailey,* 727 S.W.2d at 90; *Grand Int'l Bhd. of Locomotive Eng'rs v. Wilson,* 341 S.W.2d 206, 211 (Tex.Civ.App.-Fort Worth 1960, writ ref'd n.r.e.).

21. *See Anzilotti,* 899 S.W.2d at 267.

22. *Cf. Action Box Co., Inc.,* 130 S.W.3d 249, 251–52 (Tex. App.-Houston [14th Dist.] 2004, no pet.) (declining to address appellant's manifest disregard of the law argument because no allegation that the FAA applied to the case).

23. *Homes v. Cull,* 173 S.W.3d 565, 572 (Tex. App.-Fort Worth 2005, pet. filed); *Tanox, Inc. v. Akin, Gump, Strauss, Hauer & Feld, L.L.P.,* 105 S.W.3d 244, 252 (Tex.App.-Houston [14th Dist.] 2003, pet. denied).

24. *Cull,* 173 S.W.3d at 572.

25. *Id.; Tanox,* 105 S.W.3d at 252–53.

26. *Tanox,* 105 S.W.3d at 253.

27. *Cull,* 173 S.W.3d at 572–73.

that he recognized the applicable law and applied it. The arbitrator found that Appellants made false and misleading statements to induce Appellees to purchase Prairie Oaks, that Appellees reasonably relied on the representations to their detriment, that the representations were material, and that Appellees would not have purchased Prairie Oaks but for the representations. The arbitrator found that Pheng acted individually and as a corporate and partner representative of Pheng Prairie Oaks Ltd. and Pheng Investments and that "Pheng Ltd. and Pheng Investments by and through their officer, Defendant Pheng, and Defendant Pheng, Individually, acted intentionally with malice and deceit to intentionally create a false and misleading impression, understanding, and belief that the apartments were profitable." Appellees pleaded rescission in their third amended petition, and the arbitrator entered an award against Appellants for $1,145,000 and ordered complete rescission of the Contract upon payment of the award.

■ The true substance of Appellants' manifest disregard of the law argument is that the evidence is insufficient to support the arbitrator's finding of fraud and individual liability and award of rescission and punitive damages. But this is not an appropriate argument under the manifest disregard standard of review.[28] The "issue is not whether the arbitrator correctly interpreted the law, but whether the arbitrator, knowing the law and recognizing that the law required a particular result, simply disregarded the law."[29] Under our "extremely limited" review, Appellants have not met their burden of demonstrating

that the arbitrator manifestly disregarded the law. Accordingly, we overrule Appellants' second, third, and fourth issues. We overrule their fifth issue to the extent that they argue that the arbitrator manifestly disregard the law by awarding punitive damages.

### D. Public Policy

■ In their fifth issue, Appellants further complain that the award of punitive damages is contrary to public policy because it is not supported by clear and convincing evidence. Appellants provide no authority or argument in support of this assertion. Consequently, they have forfeited appellate review of this argument.[30]

### E. Refusal to Hear Evidence

In their seventh issue, Appellants argue that the arbitrator refused to hear evidence concerning rescission.[31] Appellants filed a motion to reopen the evidence on rescission damages in order to offer evidence of emails allegedly showing that the Appellees waived their claim of rescission. They argue that the arbitrator should have considered the emails because Appellees' election of rescission during closing arguments came as a surprise to them. The arbitrator's corrected final award, however, states, "Defendants' motion to reopen evidence and allow the introduction into evidence [of] the correspondence set out in Defendants' Supplemental Post–Arbitration Brief and Motion to Reopen Evidence on Rescission Damages is DENIED. The documents were not for a rescission, but only for partial offer to settle." Thus, although the arbitrator denied Appellants' motion to reopen evidence, he nevertheless

28. *See Cull,* 173 S.W.3d at 572–73.

29. *Bohlmann v. Byron John Printz and Ash, Inc.,* 120 Nev. 543, ——, 96 P.3d 1155, 1158 (2004).

30. *See* Tex. R. App. P. 38.1(h).

31. *See* Tex. Civ. Prac. & Rem. Code Ann. § 171.088(a)(3)(C).

considered the evidence. We overrule Appellants' seventh issue.

In their eighth issue, Appellants argue that the arbitrator refused to hear evidence material to punitive damages.[32] They claim that the arbitrator bifurcated the issue of punitive damages and that he never proceeded to the second stage of the arbitration to consider evidence relevant to punitive damages. Appellants fail to cite in the record where the arbitrator made a decision to bifurcate the issue of punitive damages,[33] and after conducting our own search, we have found no evidence that the arbitrator bifurcated the punitive damages evidence. We overrule Appellants' eighth issue.

## IV. ATTORNEY'S FEES

■ In their sixth issue, Appellants argue that the arbitrator's award of attorney's fees to Appellees was improper because Appellees presented no evidence that the fees were reasonable and necessary. We agree.

An arbitrator shall award attorney's fees as additional sums required to be paid under the award only if the fees are provided for (1) in the agreement to arbitrate or (2) by law for a recovery in a civil action in the district court on a cause of action on which any part of the award is based.[34]

The Contract provided that "[t]he prevailing party in any legal proceeding brought in relation to this Contract or transaction will be entitled to recover from the non-prevailing parties ... *reasonable* attorneys fees...." [Emphasis added.] The award states that "[Appellees] have incurred attorney's fees in the amount of $75,000.00, of which the Arbitrator finds $50,000 *to be reasonable and necessary* for the services rendered and the difficulty of the case involved in the matter at hand." [Emphasis added.]

Appellees argue that they were entitled to recover attorney's fees under Section 38.001(8) of the civil practice and remedies code, which allows recovery of attorney's fees in cause of action involving oral or written contracts.[35] Appellees also direct us to Section 38.004, which provides that "[t]he court may take judicial notice of the usual and customary attorney's fees and of the contents of the case file without receiving further evidence." [36] But the Arbitrator's award was based on "fraudulent and false misrepresentations" made with "malice," not on Appellants' breach of contract claim. Therefore, the Arbitrator could not take judicial notice of attorney's fees under Section 38.[37]

Appellees also argue that they are entitled to recover attorney's fees under Section 27.01(e) of the business and commerce code, which permits recovery of reasonable and necessary attorney's fees in cases involving fraud in real estate and stock transactions.[38] However, unlike Section 38.004, Section 27.01(e) does not provide for judicial notice of attorney's fees. Appellees were thus required to present evidence demonstrating that their attorney's

---

32. *See id.*

33. *See* TEX.R.APP. P. 38.1(h) (requiring record references in the argument).

34. TEX. CIV. PRAC. & REM.CODE ANN. § 171.048(c)(2).

35. *Id.* § 38.001(8) (Vernon 1997).

36. *Id.* § 38.004.

37. *See Hasty, Inc. v. Inwood Buckhorn Joint Venture,* 908 S.W.2d 494, 503 (Tex.App.-Dallas 1995, writ denied) ("When a claim for fees does not fall under section 38.001, the trial court may not take judicial notice of attorney's fees.").

38. *See* TEX. BUS. & COMM.CODE § 27.01(a) (Vernon 2002).

fees were reasonable and necessary. Although Appellees presented their attorney's billing statements as evidence, there was no evidence that the fees were reasonable and necessary. We therefore sustain Appellants' sixth issue.

## V. CONCLUSION

Having sustained Appellants' issue regarding attorney's fees, we modify the trial court's judgment to omit that portion of the award. Having disposed of all other issues on appeal, we affirm the trial court's judgment as modified.[39]