Opinion issued August 11, 2016



In The

# Court of Appeals

For The

# First District of Texas

―――――――――――

## NO. 01-15-00691-CV

―――――――――――

**INFINITY CAPITAL II, LLC, INFINITY CAPITAL, LLC, LAURIE A. MCRAY, AND MCRAY MONEY MANAGEMENT, LLC, Appellants**

**V.**

**STRASBURGER & PRICE, LLP, Appellee**

**On Appeal from the 281st District Court**
**Harris County, Texas**
**Trial Court Case No. 2014-32348**

## MEMORANDUM OPINION

In this interlocutory appeal, appellants, Infinity Capital II, LLC ("Infinity II"), Infinity Capital, LLC ("Infinity"), Laurie A. McRay ("McRay"), and McRay Money Management, LLC ("MMM") (collectively, "Infinity Capital"), challenge the trial court's order denying their Motion to Vacate and granting the Motion to Confirm

Arbitration Award of appellee, Strasburger & Price, LLP ("Strasburger").[1] In its sole issue, Infinity Capital contends that the trial court erred in confirming, rather than vacating, the arbitrator's Final Award.

We affirm.

## Background

In its Motion to Confirm Arbitration Award, Strasburger alleged that it "initiated an arbitration proceeding" against McRay, MMM, and Infinity "to enforce a settlement agreement previously entered into" by the parties. Subsequently, Strasburger "added" Infinity II "as a party to the arbitration" proceeding.[2]

In its First Amended Statement of Claim, Strasburger alleged that on January 14, 2013, the co-trustees of the Maribel Allport Revocable Trust "entered into" a Confidential Binding Settlement Agreement (the "Agreement") with McRay, MMM, and Infinity.[3] The Agreement contained an arbitration provision, providing:

---

[1] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 171.098 (Vernon 2011) (party may appeal judgment or decree "confirming" arbitration award).

[2] After Strasburger sought to add Infinity II as a party to the arbitration proceeding, Infinity Capital filed with the trial court its Original Petition and Emergency Application to Stay Arbitration Proceeding, seeking to prevent the addition of Infinity II as a party. Although not contained in the appellate record, the parties agree that the trial court "entered an Order requiring [Infinity II] to participate in the arbitration."

[3] As alleged by Infinity Capital in its Original Petition and Emergency Application to Stay Arbitration Proceeding, the co-trustees of the Maribel Allport Revocable Trust, in 2011, sued McRay, MMM, and Infinity (the "Allport Lawsuit"). Strasburger served as legal counsel for the co-trustees in that lawsuit. On January 14, 2013, the

2

> Any future disputes of any kind or character between or among the parties hereto shall be resolved through binding arbitration before Alan F. Levin. Any agreed party shall provide the opposing party with written notice of the grievance or future dispute and shall provide five (5) days opportunity to cure. In the absence of satisfaction to the agreed party, such party shall notify the Arbitrator of the dispute and seek a near term hearing. The Arbitrator shall convene a hearing within thirty (30) days of such notice. . . . The Arbitrator's ruling shall be final and binding on all matters whether substantive or procedural. . . .

McRay executed the Agreement on behalf of herself, individually, and as the "Authorized Signatory" for MMM and Infinity. Infinity II was not a party to the Agreement. The co-trustees "later assigned" to Strasburger "all their rights and benefits under the . . . Agreement," including their "interests" in certain "real properties."

Strasburger further alleged that Infinity Capital "wholly failed to comply with the terms of the . . . Agreement," "breached the terms of the . . . Agreement," "violated the fiduciary obligations imposed by th[e] Agreement," and "entered into a fraudulent scheme of conveying" the real properties in which Strasburger has "interests." According to Strasburger, these properties, which were "originally owned by Infinity," were "fraudulently conveyed" to Infinity II, "an entity wholly owned and controlled by McRay."

Following a hearing, the arbitrator issued the Final Award, stating:

---

parties to the Allport Lawsuit mediated their dispute and executed the Agreement, which is now the subject of the instant case.

The Parties appeared in person and through counsel before the Arbitrator for a final hearing on November 25, 2014. Upon careful consideration of the evidence adduced at trial, argument of counsel and all post-trial submissions through the date of this AWARD, the Arbitrator FINDS and RULES as follows:

1.  The several requests by [Infinity Capital] for additional time to "prepare sound, grounded and reasonable legal briefs, in light of all [t]he circumstances[,]"[] is DENIED. It has been seven (7) months since the trial of this dispute.

2.  The transfers of the following nine (9) properties from Infinity . . . to Infinity [II], as filed on May 8, 2013 and recorded in document number 20130221179, and as filed on January 7, 2015 and recorded in document number 20150007609 of the Official Public Records of Harris County, Texas were fraudulent and are therefore deemed null, void and of no legal force or effect:

    > 1) 6007 Memorial Drive, #301, Houston, Texas 77007*
    > 2) 3333 Allen Parkway, #1206, Houston, Texas 77019*
    > 3) 6327 Borg Breakpoint, Houston, Texas 77379*
    > 4) 3311 Yupon Street, #307, Houston, Texas 77006*
    > 5) 3311 Yupon Street, #602, Houston, Texas 77006*
    > 6) 3311 Yupon Street, #410, Houston, Texas 77006*
    > 7) 5026 Charriton Drive, Houston, Texas 77039*
    > 8) 8302 Burwood Park Drive, Spring, Texas 77379**
    > 9) 9311 Enmore Court, Houston, Texas 77095**

3.  Strasburger is GRANTED an equitable interest in and a lien on all of the above properties.

4.  Infinity [II] is deemed the alter ego of . . . McRay and, therefore, is jointly and severally liable for the actual damages, and attorneys' fees and expenses of Arbitration awarded to Strasburger in this Final Order.

5.  . . . McRay, individually, [MMM], Infinity . . . and Infinity [II] . . . shall, jointly and severally, pay to Strasburger the sum of $1,413,164.00 as Strasburger's actual damages in this matter.

4

6. . . . McRay, [MMM] and Infinity . . . shall pay to Strasburger the sum of $4,830.00 for sanctions as previously awarded to Strasburger in Arbitrator's Order No. 7.

7. . . . McRay, [MMM], Infinity . . . and Infinity [II] shall pay to Strasburger the sum of $307.406.00 for its reasonable and necessary attorneys' fees and expenses incurred in the prosecution of this Arbitration.

8. . . . McRay, [MMM], Infinity . . . and Infinity [II] shall pay to Strasburger the sum of up to $40,000.00 as reasonable and necessary attorneys' fees and expenses in the event that this matter is unsuccessfully appealed to the Texas Court of Appeals by [Infinity Capital].

9. . . . McRay, [MMM], Infinity . . . and Infinity [II] shall pay to Strasburger the further and additional sum of $25,000.00 as reasonable and necessary attorneys' fees and expenses in the event that this matter is unsuccessfully appealed to the Texas Supreme Court by [Infinity Capital].

10. Any original documents/deeds entrusted to the Arbitrator in the course of either this Arbitration or in the preceding mediation are subject to distribution by the Arbitrator pursuant to a written agreement by the parties. In the absence of such written agreement provided to the Arbitrator, any disputed documents being sought by any party from the Arbitrator will be deposited with the Court for disposition.

THIS IS A FINAL ORDER AND DISPOSES OF ALL CLAIMS FOR RELIEF SOUGHT BY ANY PARTY IN THIS ARBITRATION. ANY RELIEF NOT SPECIFICALLY GRANTED IS DENIED.

Strasburger then filed with the trial court its Motion to Confirm Arbitration

Award, and Infinity Capital responded with a motion to vacate the award, asserting

that "there was no valid agreement to arbitrate,"[4] the arbitrator "exceeded his powers,"[5] and the Final Award "violates public policy."

## Standard of Review

We review a trial court's decision to vacate or confirm an arbitration award de novo based on a review of the entire record. *Port Arthur Steam Energy LP v. Oxbow Calcining LLC*, 416 S.W.3d 708, 713 (Tex. App.—Houston [1st Dist.] 2013, pet. denied); *Cambridge Legacy Grp., Inc. v. Jain*, 407 S.W.3d 443, 447 (Tex. App.—Dallas 2013, pet. denied). Because Texas law favors arbitration, our review of an arbitration award is "extraordinarily narrow." *E. Tex. Salt Water Disposal Co. v. Werline*, 307 S.W.3d 267, 271 (Tex. 2010); *IPCO–G.&C. Joint Venture v. A.B. Chance Co.*, 65 S.W.3d 252, 255–56 (Tex. App.—Houston [1st Dist.] 2001, pet. denied). An arbitration award has the same effect as a judgment of a court of last resort, and a reviewing court may not substitute its judgment for that of the arbitrator merely because it would have reached a different result. *CVN Grp., Inc. v. Delgado*, 95 S.W.3d 234, 238 (Tex. 2002); *J.J. Gregory Gourmet Servs., Inc. v. Antone's Imp. Co.*, 927 S.W.2d 31, 33 (Tex. App.—Houston [1st Dist.] 1995, no writ).

Because arbitration is favored as a means of dispute resolution, every reasonable presumption must be indulged to uphold an arbitrator's decision, and

---

[4]     *See* TEX. CIV. PRAC. & REM. CODE ANN. § 171.088(a)(4) (Vernon 2011).

[5]     *See id.* § 171.088(a)(3)(A).

6

none is indulged against it. *City of Baytown v. C.L. Winter, Inc.*, 886 S.W.2d 515, 518 (Tex. App.—Houston [1st Dist.] 1994, writ denied). The award is presumed valid, and it is entitled to great deference. *Humitech Dev. Corp. v. Perlman*, 424 S.W.3d 782, 790 (Tex. App.—Dallas 2014, no pet.). Review is limited such that a trial court may not vacate an arbitration award even if it is based upon a mistake of fact or law. *Universal Comput. Sys., Inc. v. Dealer Sols., L.L.C.*, 183 S.W.3d 741, 752 (Tex. App.—Houston [1st Dist.] 2005, pet. denied); *J.J. Gregory*, 927 S.W.2d at 33. Because we must accord great deference to arbitration awards, judicial scrutiny of these awards focuses on the integrity of the arbitration process, not on the propriety of the result. *Women's Reg'l Healthcare, P.A. v. FemPartners of N. Tex., Inc.*, 175 S.W.3d 365, 367–68 (Tex. App.—Houston [1st Dist.] 2005, no pet.).

**Arbitration Award**

In its sole issue, Infinity Capital argues that the trial court erred in confirming, rather than vacating, the arbitrator's Final Award because "there was no agreement to arbitrate," the arbitrator "exceeded his powers by conducting [the] arbitration," and the Final Award "violates public policy." *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 171.087, 171.088(a)(3)(A), (a)(4) (Vernon 2011).

A trial court must confirm an arbitrator's award upon a party's application, unless grounds are offered for vacating the award. *Id.* § 171.087; *see also Callahan & Assocs. v. Orangefield Indep. Sch. Dist.*, 92 S.W.3d 841, 844 (Tex. 2002); *Hamm*

7

*v. Millennium Income Fund, L.L.C.*, 178 S.W.3d 256, 262 (Tex. App.—Houston [1st Dist.] 2005, pet. denied) (confirmation of award "is the default"). Section 171.088 provides the exclusive grounds for vacating an arbitration award. *Hoskins v. Hoskins*, No. 15-0046, --- S.W.3d ---, 2016 WL 2993929, at \*3–5, \*7 (Tex. May 20, 2016); *see also Women's Reg'l*, 175 S.W.3d at 367 ("Unless a party relies on a statutory basis to vacate an arbitration award, the trial court must affirm the award."); *see* TEX. CIV. PRAC. & REM. CODE ANN. § 171.088. The party challenging the arbitration award has the burden to present the trial court with a sufficient record of the arbitration proceeding to show that grounds exist to vacate the award. *Eurocapital Grp., Ltd v. Goldman Sachs & Co.*, 17 S.W.3d 426, 429 (Tex. App.—Houston [1st Dist.] 2000, no pet.); *see also Statewide Remodeling, Inc. v. Williams*, 244 S.W.3d 564, 568 (Tex. App.—Dallas 2008, no pet).

### No Agreement to Arbitrate

Infinity Capital first argues that the trial court was required to vacate the arbitrator's Final Award because (1) "there was no agreement to arbitrate," as "the arbitration provision . . . was part of an invalid and unenforceable agreement," (2) "[t]he issue of whether there was an agreement to arbitrate was not the subject of a prior proceeding before the trial court," and (3) it "timely raised the lack of an agreement during the arbitration process."

Texas Civil Practice and Remedies Code section 171.088(a)(4) provides that a trial court shall vacate an arbitration award where (1) "there was no agreement to arbitrate," (2) "the issue was not adversely determined in a proceeding" to compel or stay arbitration, and (3) the party seeking to vacate the award "did not participate in the arbitration hearing" without objection. TEX. CIV. PRAC. & REM. CODE ANN. § 171.088(a)(4).

Here, we primarily focus on Infinity Capital's assertions that there was no agreement to arbitrate and it timely raised such an objection during the "arbitration process." In *Women's Regional*, this Court addressed arguments similar to those raised by Infinity Capital. *See Women's Reg'l*, 175 S.W.3d at 367. Women's Regional Healthcare, P.A. ("WRH") entered into a "Service Agreement," which contained an arbitration provision, with FemPartners of North Texas, Inc. and FemPartners, Inc. (collectively, "FemPartners"). *Id.* at 366 (internal quotations omitted). After an arbitration panel awarded it damages, FemPartners moved to confirm the arbitration award, and the trial court granted the motion. *Id.* at 366–67.

On appeal, WRH argued that the trial court erred in confirming, rather than vacating, the arbitration award because the Service Agreement, which contained the arbitration provision, was "void." *Id.* at 367. Specifically, WRH relied on section 171.088(a)(4) in support of vacatur, arguing that "there was no agreement to arbitrate because the [S]ervice [A]greement containing the arbitration agreement was

illegal . . . and WRH raised the issue of illegality of the [S]ervice [A]greement in the arbitration." *Id.*; *see* TEX. CIV. PRAC. & REM. CODE ANN. § 171.088(a)(4).

In concluding that WRH had not satisfied the requirements for vacatur under section 171.008(a)(4), we noted that the statute requires that there be "no agreement to arbitrate" and "[a]n objection to the validity of a contract containing [the] agreement to arbitrate as a whole does not satisfy the statute." *Women's Reg'l*, 175 S.W.3d at 368. Instead, a party seeking to vacate an arbitration award must "object specifically to the arbitration itself on the ground that there was never any agreement to arbitrate between the parties." *Id.* at 369 (emphasis omitted). And "if the parties' dispute arises from a contract containing an arbitration clause, a challenge to the contract as a whole—as opposed to a challenge *specific* to the arbitration clause itself—[is to] be resolved by the arbitrator[]," not the trial court. *Id.* at 368 (emphasis added). Accordingly, we held that WRH's challenge to the Service Agreement as illegal and void did not constitute an objection to the validity of the arbitration provision contained in the Service Agreement and WRH could not rely on section 171.088(a)(4) in support of vacatur. *Id.* at 367–69.

As in *Women's Regional*, the Agreement entered into by the parties in the instant case contained an agreement to arbitrate. *See id.* at 366. In fact, Infinity Capital repeatedly recognized its agreement to arbitrate throughout the proceedings below, including in its filings in the trial court. For instance, in its Original Petition

10

and Emergency Application to Stay Arbitration Proceeding, Infinity Capital stated: "The Agreement provides that any future dispute o[f] any kind or character . . . shall be resolved through *binding arbitration* before Alan F. Levin (the 'Arbitration Provision')." (Emphasis added.) And, in its First Amended Petition for Declaratory Judgment, Infinity Capital reiterated that the Agreement "contained a provision providing for *arbitration of any disputes* regarding the terms thereof," and "[w]hen the parties disagreed on the enforceability and terms of the Agreement, an arbitration was convened."[6] (Emphasis added.)

Further, Infinity Capital, in its Motion to Vacate, did not challenge the arbitration provision specifically; rather, it asserted that the Agreement, as a whole, was "illegal, invalid, and unenforceable." *See id.* at 367 (arguing "contract containing the arbitration provision was void"). And the objection that Infinity Capital raised before the arbitrator was not an objection that there was no agreement to arbitrate, but that the parties' entire Agreement was "unenforceable" and "invalid."[7] *See id.* at 366 (objecting "on eve of arbitration hearing . . . that service agreement [as a whole] was illegal").

---

[6] Infinity Capital also attached a copy of the Agreement's arbitration provision to its filings in the trial court.

[7] It is unnecessary for this Court to address whether Infinity Capital timely raised its objection before the arbitrator. *See* TEX. R. APP. P. 47.1.

11

To satisfy section 171.088(a)(4)'s requirements for vacatur, Infinity Capital was "required to object specifically to the arbitration itself on the ground that there was never any agreement to arbitrate between the parties." *See id.* at 369 (emphasis omitted). And its "objection to the validity" of the Agreement "as a whole" was simply not sufficient to "satisfy the statute." *See id.* at 368.

Accordingly, we hold that the trial court did not err in not vacating the arbitrator's Final Award pursuant to section 171.088(a)(4).

### *Exceeding Powers*

Infinity Capital next argues that trial court was required to vacate the arbitrator's Final Award because the arbitrator "exceeded his powers by conducting an arbitration and issuing an award based upon an arbitration clause contained in an invalid and illegal settlement agreement."

Civil Practice and Remedies Code section 171.088(a)(3)(A) provides that a trial court shall vacate an award where an arbitrator exceeded his powers. TEX. CIV. PRAC. & REM. CODE ANN. § 171.088(a)(3)(A). An arbitrator derives his authority to decide a dispute from the parties' arbitration agreement. *Nafta Traders, Inc. v. Quinn*, 339 S.W.3d 84, 90 (Tex. 2011); *Gulf Oil Corp. v. Guidry*, 327 S.W.2d 406, 408 (Tex. 1959). Therefore, the scope of an arbitrator's authority depends on the arbitration agreement, and an arbitrator exceeds his authority when he decides a matter that is not properly before him. *See Gulf Oil Corp.*, 327 S.W.2d at 408;

12

*Forged Components, Inc. v. Guzman*, 409 S.W.3d 91, 104 (Tex. App.—Houston [1st Dist.] 2013, no pet.).

To determine whether an arbitrator exceeded his powers, we examine the language of the parties' arbitration agreement. *Allstyle Coil Co. v. Carreon*, 295 S.W.3d 42, 44 (Tex. App.—Houston [1st Dist.] 2009, no pet.); *Graham-Rutledge & Co. v. Nadia Corp.*, 281 S.W.3d 683, 690 (Tex. App.—Dallas 2009, no pet.). And we resolve any doubts concerning the scope of what is allowed in favor of arbitration. *See Centex/Vestal v. Friendship W. Baptist Church*, 314 S.W.3d 677, 684 (Tex. App.—Dallas 2010, pet. denied). It is only when the arbitrator departs from the agreement and, in effect, dispenses his own idea of justice that the arbitration award may be unenforceable. *Forged Components*, 409 S.W.3d at 104; *Centex/Vestal*, 314 S.W.3d at 684.

Here, the parties' arbitration agreement provided:

> *Any future disputes of any kind or character* between or among the parties hereto shall be resolved through binding arbitration before Alan F. Levin. Any agreed party shall provide the opposing party with written notice of the grievance or future dispute and shall provide five (5) days opportunity to cure. In the absence of satisfaction to the agreed party, such party shall notify the Arbitrator of the dispute and seek a near term hearing. The Arbitrator shall convene a hearing within thirty (30) days of such notice. . . . The Arbitrator's ruling shall be final and binding on all matters whether substantive or procedural. . . .

(Emphasis added.)

As evidenced by its language, the arbitration provision broadly covers "[a]ny future disputes" between the parties. *See City of Baytown*, 886 S.W.2d at 518 (arbitration provision, "provid[ing] that 'all questions of dispute' arising under the contract were to be arbitrated," "broad"); *see also Centex/Vestal*, 314 S.W.3d at 685 (contract provision, stating "'[a]ny claim arising out of or related to the Contract' is subject to arbitration," "broad" and encompassed "wide range of disputes" (alteration in original)); *Baker Hughes Oilfield Operations, Inc. v. Hennig Prod. Co.*, 164 S.W.3d 438, 443–44 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (agreement to arbitrate, "stating the parties would arbitrate 'any controversy or claim arising out of or relating to the Agreement or to . . . services, equipment, or products provided to Customer,'" constituted "broad arbitration provision [that] subsume[d] *any* controversy or claim"). And when an arbitration provision employs broad language, such as the one in the instant case, it is construed as evidencing the parties' intent to be inclusive rather than exclusive. *Centex/Vestal*, 314 S.W.3d at 685.

Infinity Capital has not asserted that the arbitrator's Final Award covered any matters outside the scope of the parties' arbitration agreement. *See Forged Components*, 409 S.W.3d at 104–05 (party did not "contend that the arbitrator exceeded her authority by departing from the terms of the [arbitration] agreement and dispensing her own idea of justice, nor d[id] it contend that the arbitrator adjudicated a claim outside the scope of the agreement or purported to bind a party

not subject to arbitration"); *Pheng Invs., Inc. v. Rodriguez*, 196 S.W.3d 322, 330 (Tex. App.—Fort Worth 2006, no pet.) ("Appellants do not complain that the arbitrator decided an issue outside the scope of his powers, thus exceeding his authority, but that he merely decided an issue incorrectly."); *see also City of Baytown*, 886 S.W.2d at 518 (explaining "[a]n award that goes beyond the matters submitted for arbitration is void to that extent"). In fact, Infinity Capital's complaint does not at all focus on the parties' arbitration agreement or the scope of the arbitration provision. Instead, Infinity Capital argues that the arbitrator exceeded his powers because the Agreement, as a whole, was "invalid and illegal."

The enforceability and validity of the Agreement is a matter "of any kind or character between or among the parties." And based on the language of the parties' arbitration agreement such an issue clearly falls within the arbitrator's authority. *See Centex/Vestal*, 314 S.W.3d at 685–86 ("[W]hen, as here, there is a broad arbitration clause, arbitration of a particular claim should not be denied unless it can be said 'with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'"); *Women's Reg'l*, 175 S.W.3d at 368 ("[I]f the parties' dispute arises from a contract containing an arbitration clause, a challenge to the contract as a whole . . . must be resolved by the arbitrator[]."); *see also Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445–46, 126 S. Ct. 1204, 1209 (2006) (under "federal arbitration law" "unless the challenge is to the

15

arbitration clause itself, the issue of the contract's validity is considered by the arbitrator").

Further, to the extent that Infinity Capital's complaint concerns the arbitrator's failure to conclude that the Agreement as a whole was unenforceable, illegal, or invalid, that is simply not a complaint that the arbitrator exceeded his powers and does not constitute a ground for vacatur. *See Pheng Invs.*, 196 S.W.3d at 330; *see also Barton v. Fashion Glass & Mirror, Ltd.*, 321 S.W.3d 641, 647 (Tex. App.—Houston [14th Dist.] 2010, no pet.) ("The arbitrator resolved the parties' dispute. That he did so in an unexpected manner does not mean the arbitrator acted outside the scope of his authority."); *Centex/Vestal*, 314 S.W.3d at 686 ("A party cannot submit an issue to the arbitration panel and then, when an unfavorable result occurs, claim the arbitrators exceeded their authority in deciding the issue.").

Accordingly, we hold that the trial court did not err in not vacating the arbitrator's Final Award pursuant to section 171.088(a)(3)(A).

### *Public Policy*

Finally, Infinity Capital argues that the trial court should have vacated the arbitrator's Final Award because it "violates public policy" and the Texas Arbitration Act ("TAA") does not "provide[] the only means for vacatur of an arbitration award."

16

Recently, in *Hoskins*, the Texas Supreme Court held that in proceedings governed by the TAA,[8] Civil Practice and Remedies Code section 171.088 "provides the exclusive grounds for vacatur of an arbitration award." 2016 WL 2993929, at *7. And a party seeking to avoid confirmation of an arbitration award may only do so "by demonstrating a ground expressly listed in section 171.088." *Id.* at *5. In other words, "for all practical purposes, all other common-law vacatur doctrines are no longer viable with regard to arbitrations governed by the TAA." *Id.* at *7 (Willett, J., concurring).

Accordingly, we hold that the trial court did not err in not vacating the arbitrator's Final Award on the ground that it violates "public policy."

We overrule Infinity Capital's sole issue.

## Conclusion

We affirm the judgment of the trial court.

Terry Jennings
Justice

Panel consists of Chief Justice Radack and Justices Jennings and Lloyd.

---

[8] The parties agree that this case is governed by the TAA.

17