Opinion issued June 18, 2009






 










In The

Court of Appeals

For The

First District of Texas






NO. 01-07-00456-CV

____________


MARY FOGAL AND ROBERT FOGAL, Appellants


V.


STATURE CONSTRUCTION, INC., JORGE CASIMIRO, TOM
THIBODEAU AND BERNIE KANE, Appellees






On Appeal from the 80th Judicial District Court

Harris County, Texas

Trial Court Cause No. 2005-70110






O P I N I O N

 Appellants, Mary Fogal and Robert Fogal, and appellees, Stature Construction,
Inc., Jorge Casimiro, Tom Thibodeau, and Bernie Kane (collectively "Stature"), filed
motions for rehearing. We requested from the Fogals a response to Stature's motion,
and the Fogals responded. We grant rehearing and withdraw our opinion and
judgment issued on January 29, 2009.

 This is an appeal following the trial court's final judgment confirming an
arbitration award. The judgment orders Stature to pay the Fogals $37,308.40 and
post-judgment interest. In five issues, the Fogals challenge the trial court's decision
to send the parties to arbitration, and alternatively, the trial court's decision to
confirm the arbitrator's award. In its sole counter-issue, Stature asserts the trial court
impermissibly modified the arbitration award by adding post-judgment interest. We
conclude the trial court properly sent the case to arbitration and confirmed the award,
but the trial court improperly modified the arbitrator's award by adding post-judgment interest. We modify the trial court's judgment to exclude the award of post-judgment interest, and affirm as modified. 

Background

 The Fogals purchased a new-construction townhome by entering into an earnest
money contract, which contained an agreement to arbitrate disputes. In pertinent part,
the arbitration clause stated,


18. MEDIATION AND BINDING ARBITRATION:

Any controversy or claim whether such claim sounds in contract, tort,
or otherwise, arising out of or relating to (i) this Agreement, (ii) any
branch of the Agreement, (iii) the subject matter of the Agreement, (iv)
the commercial or economic relationship of the parties to the
Agreement, (v) any representations or warranties, express or implied,
relating to the Agreement, (vi) any violations of any statute relating to
the Agreement or the subject matter of the Agreement, and /or (vii) any
related agreements between the parties to the Agreement ("the
disputes") shall be settled by arbitration in accordance with the
Construction Industry Arbitration Rules of the American Arbitration
Association ("AAA") and the Federal Arbitration Act (Title 9 of the
United States Code), and Judgement upon the award rendered by the
arbitrator(s) may be confirmed, entered, and enforced in any court
having jurisdiction.


The earnest-money contract identified "Robert and Mary J. Fogal" as "Buyer" and
"Tremont Homes" as "Seller." 

 The Fogals soon discovered a roof leak and requested that Stature make repairs,
but Stature refused. The leak eventually caused mold to grow in the home. Facing
impending litigation over the costs for the repairs, Stature filed for an American
Arbitration Association (AAA) proceeding against the Fogals seeking declaratory
judgment that Stature was not responsible for damages to the Fogals' home. However,
the arbitrator terminated the arbitration proceeding when Stature failed to pay the
required deposits. According to Stature, the declaratory judgment was no longer
needed after the house was foreclosed, so it opted not to pay the fees to continue the
arbitration. 

 The Fogals eventually learned that Stature had failed to disclose construction
defects in the roofing that were known to Stature prior to sale. The Fogals then filed
suit against Stature, alleging statutory and common-law fraud, and violations of the
Texas Deceptive Trade Practices Act (DTPA).

 Stature moved to compel arbitration. The Fogals objected to the motion to
compel arbitration by asserting the same issues that are presented in this appeal. The
Fogals asserted that the arbitration agreement was procedurally and substantively
unconscionable due to the inconspicuous print. The Fogals also claimed that Stature
could not enforce the arbitration agreement because that agreement was between the
Fogals and Tremont Homes, which was not an assumed name of Stature. The Fogals
further contended that Stature waived its right to demand arbitration by previously
demanding then failing to pursue the earlier-filed arbitration proceeding. Stature
responded to the Fogals' objections to its motion to compel arbitration by claiming it
had the right to enforce the arbitration clause in the earnest-money contract between
the Fogals and Tremont Homes, even though the contract contained no reference to
either Stature or Tremont Custom Homes. First, Stature presented other documents
related to the sale of the house purchased by the Fogals to show that Stature, rather
than Tremont Homes, was the seller of the house. The settlement statement from the
closing of the house purchase and the Special Warranty Deed conveying the house to
the Fogals identifed Stature as the seller of the house. Thus, Stature presented other
documents related to the sale of the house that showed it was the seller of the house
rather than Tremont Homes, which was shown as the seller on the earnest-money
contract. 

 Second, Stature presented evidence to show that Stature did business under the
name "Tremont Custom Homes," and that the earnest money contract's reference to
"Tremont Homes" was a scrivener's error in that the seller should have been shown
as Tremont Custom Homes. Jorge Casimiro, Stature's president, stated, "During this
time period, Stature conducted business under three assumed names: Simon Homes,
Stature Homes and Tremont Custom Homes." Thomas Thibodeau, another Stature
officer, also testified. Thibodeau was asked, "What was Tremont Homes at the time
[the Contract] was executed in February 2004?" Thibodeau responded, "Well. As I
mentioned, it should have been Tremont Custom Homes. And that was a marketing
name for Stature Construction, Inc." Stature, therefore, presented evidence that the
contract's reference to Tremont Homes should have been Tremont Custom Homes,
which was a marketing name used by Stature. After the Fogals bought their house,
Stature filed an assumed name certificate for Tremont Custom Homes, but not for
Tremont Homes. 

 After a hearing, the trial court granted the order to compel arbitration and the
case was litigated before an arbitrator. The arbitrator held a three-day hearing, which
was transcribed at the request of the Fogals. The Fogals called six witnesses and
offered 17 exhibits, 16 of which were admitted into evidence. Stature rested without
presenting witnesses or introducing any evidence. 

 The arbitrator found that the Fogals breached the earnest money contract by
filing suit in district court, and awarded Stature $14,597.50 in attorney's fees plus
$146.10 in expenses. The arbitrator granted the Fogals' common-law fraud claim,
awarding the Fogals $40,832 in damages while denying recovery for medical expenses
and exemplary damages. The arbitrator denied the Fogals' claims for statutory fraud,
for damages under the DTPA, for costs and attorney's fees under the Texas Residential
Construction & Liability Act (RCLA), and for a declaration that Jorge Casimiro and
Tom Thibodeau were alter egos of Stature Construction, Inc. The arbitrator charged
Stature with all fees and expenses of the American Arbitration Association (AAA) as
well as compensation of the arbitrator, ordering Stature to reimburse the Fogals
$11,220. The net result of the arbitrator's award was $37,308.40 for the Fogals. 
Concerning the common-law fraud claim, the arbitrator found:

 This Arbitrator does grant the Common Law Fraud claim. There
was sufficient evidence of Stature Construction, Inc.'s involvement in
ongoing litigation regarding a defective roofing system on the Fogals'
home. Although Stature claims there were substantial repairs and
replacement on this "new" home, there was evidence Stature was still
completing repairs just a few weeks before closing. The nondisclosure
of material fact(s) element was satisfied along with the other required
elements. Further, once the Fogals made their initial complaints about
leaks in their home, Stature should have handled such complaints
immediately in light of the undisclosed prior leaks and problems with
the home. The lack of diligence by Stature was considered when
evaluating the calculation of damages.


 After the arbitrator issued its award, the Fogals filed a "Motion to Vacate
Arbitration Award, Motion for New Trial and Alternatively, Plaintiffs' Motion to
Modify and Enter Arbitration Award." In the motion, the Fogals asserted the same
issues that are presented in this appeal. The Fogals challenged the trial court's
decision to confirm the arbitrator's award by asserting that the arbitrator should have
referred the case back to the trial court when the arbitrator found that the entire
agreement was obtained by fraud because that finding necessarily made the arbitration
clause an agreement obtained by fraud. The Fogals also contended that the arbitrator
conducted the hearing so as to substantially prejudice the Fogals' rights by excluding
certain evidence and by the sequence of the evidence presented. The Fogals further
contended that enforcement of the arbitration clause violated the open courts and due
process provisions in the constitution. Alternatively, the Fogals claimed they should
not have to pay Stature's attorney's fees or any costs of the arbitration, and the Fogals
should be awarded pre- and post-judgment interest. The trial court affirmed the
arbitrator's award, adding post-judgment interest. 

The Trial Court's Order Compelling the Parties to Arbitrate

 The Fogals assert the trial court erred by compelling the parties to arbitrate. In
three issues that challenge the trial court's decision to send the parties to arbitration,
the Fogals assert Stature cannot enforce the arbitration clause in the earnest money
contract because the arbitration clause was procedurally unconscionable due to
inconspicuous print; Stature, a nonsignatory, did not file an assumed name certificate
for Tremont Homes, which was the entity that entered the arbitration clause with the
Fogals; and Stature waived its right to demand arbitration by abandoning a previously
filed arbitration proceeding.

 A. Standard of Review 

 "Whether an arbitration agreement is enforceable is subject to de novo review." 
In re Labatt Food Serv., L.P., 279 S.W.3d 640, 643 (Tex. 2009). The parties do not
dispute that the arbitration agreement is governed by the FAA. See 9 U.S.C.S. §§
1-307 (LexisNexis 2008). Under the FAA, a party to a contract containing an
arbitration agreement may challenge the arbitration agreement itself on "grounds as
exist at law or in equity for revocation of any contract." 9 U.S.C.S. § 2; see also In re
Poly-America, L.P., 262 S.W.3d 337, 347 (Tex. 2008) (citing First Options of
Chicago, Inc. v. Kaplan, 514 U.S. 938, 944, 115 S. Ct. 1920, 1924 (1995)) ("In
determining the validity of an agreement to arbitrate under the FAA, courts must first
apply state law governing contract formation."). "[O]rdinary principles of state
contract law determine whether there is a valid agreement to arbitrate." In re Kellogg
Brown & Root, 166 S.W.3d 732, 738 (Tex. 2005); see also Labatt, 279 S.W.3d at 643.

 B. Procedural Unconscionability Due to Inconspicuous Print 

 In their second issue, the Fogals assert that "the trial court erred in compelling
arbitration where the agreement to arbitrate was unconscionable and inconspicuous." 
The Fogals contend that the clause is procedurally unconscionable under the public
policy of Texas, as now codified in Texas Property Code section 420.003.

 If an agreement to arbitrate exists encompassing the claims in question, and the
party opposing arbitration has failed to prove its defenses, then a trial court has no
discretion; its only option is to compel arbitration. In re FirstMerit Bank, N.A., 52
S.W.3d 749, 753-54 (Tex. 2001). In the context of enforcement of an arbitration
agreement, defenses refer to unconscionability, duress, fraudulent inducement, and
revocation. Id. at 756. Procedural unconscionability refers to the fairness of the
circumstances surrounding adoption of the arbitration clause. See In re Luna, 175
S.W.3d 315, 319 (Tex. App.--Houston [1st Dist.] 2004, orig. proceeding). Texas Property Code section 420.003 provides that after September 1, 2007 an
arbitration clause in a new-home contract must "be conspicuously printed or typed in
a size equal to at least 10-point bold type or the computer equivalent." See Tex. Prop.
Code Ann. § 420.003 (Vernon Supp. 2008). The legislative note to the statute states
that "this Act applies only to [new homes that are required to be registered under the
comprehensive act] that are filed on or after September 1, 2007." See id. The public
policy of Texas, therefore, is to now require the conspicuous printing. See Fairfield
Ins. Co. v. Stephens Martin Paving, L.P., 246 S.W.3d 653, 665 (Tex. 2008) ("The
legislature determines public policy through the statutes it passes."). Because the
Fogals' agreement was signed prior to 2007, section 420.003 does not apply to this
agreement. See Tex. Prop. Code Ann. § 420.003. We hold the Fogals' agreement
does not violate the policy as stated in section 420.003 because that section does not
apply to this agreement due to the effective date of the section. See id.

 To the extent that the Fogals are asserting a policy argument concerning the
conspicuousness of the print other than as codified in section 420.003, we conclude
the argument is waived due to inadequate briefing. See Tex. R. App. P. 38.1(h). In
their brief, the Fogals state that the current font requirements were the preexisting
policy of Texas, but they provide no authority to support the statement, nor do they
provide anything but a conclusory assertion that this must have been the policy then
because it is now the codified law. Moreover, the Fogals suggest that this arbitration
agreement is inconspicuous, but they do not explain how it was inconspicuous and
how it would have violated any then applicable policy. We hold the Fogals have
waived any policy complaint outside Property Code section 420.003. See Tex. Prop.
Code Ann. § 420.003. 

 We overrule the second issue.

 C. Stature as Non-Signatory to Agreement Signed by Tremont Homes

 In their first issue, the Fogals state, "The District Court erred in compelling
arbitration where no valid assumed name certificate was on file for the entity named
in the agreement containing the arbitration clause." In their reply brief, the Fogals
clarify this position by stating that "arbitration, if any, can only be compelled by the
party signing the agreement and not by Appellee Stature." 

 1. Enforcement by Non-Signatory

 "Because arbitration is contractual in nature, the FAA generally 'does not
require parties to arbitrate when they have not agreed to do so.'" Kellogg Brown &
Root, 166 S.W.3d at 738. Federal and Texas state courts have recognized, however,
that "'[i]t does not follow . . . that under the [FAA] an obligation to arbitrate attaches
only to one who has personally signed the written arbitration provision'; instead, under
certain circumstances, principles of contract law and agency may bind a non-signatory
to an arbitration agreement." Id. 

 Here, at first blush, Stature appears to be a non-signatory to the agreement
because the agreement that contained the arbitration clause was signed by the Fogals
and Tremont Homes. However, the evidence shows Stature was doing business under
the name "Tremont Custom Homes," which was the entity that should have been listed
on the earnest-money contract that referred to Tremont Homes. Moreover, the deed
for the house purchased by the Fogals shows that Stature was the seller of the
townhouse referred to in the earnest-money contract. The Fogals do not dispute that
Stature was the seller of the townhouse, that Stature was doing business as Tremont
Custom Homes, or that Thibodeau said the reference to Tremont Homes in the earnest-money contract was meant to reference Tremont Custom Homes. Instead, the Fogals
assert that Stature could not compel the arbitration because it did not file an assumed
name certificate for Tremont Homes. 

 2. The Lack of an Assumed Name Certificate 

 According to the Fogals, Stature later filed an assumed name certificate stating
it was doing business as "Tremont Custom Homes," but it has not filed an assumed
name certificate for "Tremont Homes." However, the failure to file an assumed name
certificate does not invalidate the agreement to arbitrate.

 Under the Assumed Business or Professional Name Act, 

 

Any corporation, limited partnership, registered limited liability
partnership, or limited liability company which regularly conducts
business or renders professional services in this state under an assumed
name, or which may be required by law to use an assumed name in this
state to conduct such business or render such services, shall file in the
office of the Secretary of State . . . a certificate setting forth: 


(1) the assumed name under which such business or professional
service is or is to be conducted or rendered . . . . 

 

Tex. Bus. & Comm. Code Ann. § 36.11(a) (Vernon 2002). But failure to register an
assumed name does not impair the validity of any contract, according to the Texas
Business and Commerce Code section 36.25, which states:Failure to comply with the provisions of this chapter by any person shall
not impair the validity of any contract or act by such person nor prevent
such person from defending any action or proceeding in any court of this
state, but such person shall not maintain an action or proceeding in any
court of this state arising out of a contract or act in which an assumed
name was used until an original, new, or renewed assumed business or
professional name certificate has been filed as required by this chapter. 
In an action or proceeding brought against a person that has not
complied with this chapter, the plaintiff or other party bringing the suit
or proceeding may recover, if the court shall so determine, expenses
incurred, including attorney's fees, in location and effecting service of
process on such person.

Tex. Bus. & Comm. Code Ann. § 36.25 (Vernon 2002). The plain language of this
statute makes clear that an entity's failure to comply with the statute does not affect
the entity's capacity to defend a suit. See Sixth RMA Partners, L.P. v. Sibley, 111
S.W.3d 46, 55 (Tex. 2003). Moreover, the plain language of the statute plainly states
that the failure to file the assumed name certificate "shall not impair the validity of any
contract." Tex. Bus. & Comm. Code Ann. § 36.25. Under the Business and
Commerce Code, therefore, the failure of Stature to file an assumed name certificate
for Trement Homes does not invalidate the agreement, and could not be a basis for
finding the arbitration clause unenforceable. See Tex. Bus. & Comm. Code Ann. 

§ 36.25. 

 We overrule the Fogals' first issue.

 D. Waiver of Arbitration by Invocation of Litigation

 In their fifth issue, the Fogals assert that Stature waived its right to demand
arbitration when it filed and later abandoned the original arbitration proceedings. 

 "[A] party waives an arbitration clause by substantially invoking the judicial
process to the other party's detriment." Perry Homes v. Cull, 258 S.W.3d 580, 589-90
(Tex. 2008). Waiver is a legal question for the court based on the totality of the
circumstances, and asks whether a party has substantially invoked the judicial process
to an opponent's detriment, the latter term meaning inherent unfairness caused by "a
party's attempt to have it both ways by switching between litigation and arbitration to
its own advantage." Id. at 597; see also In re Bruce Terminix Co., 988 S.W.2d 702,
704 (Tex. 1998). 

 Stature never invoked litigation through the judicial process. Stature demanded
arbitration, then failed to pay the arbitration fee, resulting in the dismissal of the
arbitration. After that, the Fogals filed suit. Stature responded by filing a motion to
compel arbitration. Thus, Stature has never sought to invoke the litigation process. 
Instead, it has only sought arbitration for resolution of the disputes between it and the
Fogals. Stature has not attempted to "have it both ways by switching between
litigation and arbitration." See Perry Homes, 258 S.W.3d at 597. We hold Stature did
not waive its right to demand arbitration by previously demanding arbitration. 

 We overrule the Fogals' fifth issue.Trial Court's Denial of Motion to Vacate Award


 In their third issue, the Fogals assert "the trial court erred in failing to modify or
vacate the arbitration award because the arbitrator found the entire agreement was
procured by fraud." Although the Fogals mention modification of the award in their
statement of this issue, what they seek as a remedy is the trial court's vacation of the
entire award. Moreover, although the caption of the issue relates only to the finding
by the arbitrator that the earnest-money contract was obtained by fraud, within this
issue are subissues discussing related reasons why the trial court should have vacated
the award. 


 A. Standard of Review

 The court of appeals reviews de novo a trial court's decision to confirm or vacate
an arbitration award under the FAA. Myer v. Americo Life, Inc., 232 S.W.3d 401, 407
(Tex. App.--Dallas 2007, no pet.). A district court may vacate an award under the
FAA only if (1) the award was procured by fraud, corruption, or undue means; (2) there
was evidence of partiality or corruption among the arbitrators; (3) the arbitrators were
guilty of misconduct that prejudiced the rights of a party; or (4) the arbitrators exceeded
their powers. 9 U.S.C.S. § 10(a). 

 B. Arbitrator's Finding that Entire Contract Was Procured by Fraud

 As part of their third issue, the Fogals contend the entire agreement is void,
including the arbitration clause, since the arbitrator found the agreement was
fraudulently obtained. The Fogals contend that, although the issue of fraudulent
inducement of the entire agreement must go to the arbitrator, once the arbitrator
determines the entire agreement was obtained by fraud, that finding "vitiates all
obligations contained in an agreement," including the arbitration clause. The Fogals
assert that "the rule of severability rests 'on the assumption that there is an underlying
agreement.'" The Fogals contend that once the arbitrator finds the agreement is
obtained by fraud, the rule of severability no longer applies, and the finding by the
arbitrator that the entire agreement was obtained by fraud requires the arbitrator to
determine that the arbitration clause is also obtained by fraud. At that point, the Fogals
contend the arbitrator should cease the arbitration hearing and require the entire case
be sent to the trial court for litigation. The Fogals do not cite to any authority to
support their position. 

 Stature responds that an agreement to arbitrate is treated as an entirely different
contract between the parties, even if the arbitration clause is subsumed within a larger
contract. Stature explains that unless a party can prove that the specific arbitration
clause itself was procured by fraud, as opposed to the entire agreement which contains
the arbitration clause, the arbitration agreement is valid and all disputes encompassed
by its terms must be arbitrated.

 The defense of fraudulent inducement "must specifically relate to the Arbitration
Addendum itself, not the contract as a whole, if [it is] to defeat arbitration. Defenses
that pertain to the entire installment contract can be arbitrated." FirstMerit Bank, 52
S.W.3d at 756. "[W]hile fraud in the inducement of an arbitration agreement is a
defense to arbitration, whether the sellers made any misrepresentations in the
inducement of the underlying contract relates to the contract's validity and can be
arbitrated." Id. at 755. Though the Fogals correctly note that a contract induced by
fraud is no contract at all because it lacks agreement of the parties, see Schlumberger
Tech. Corp. v. Swanson, 959 S.W.2d 171, 178 (Tex. 1997), this does not affect
arbitrability of the dispute. See Will-Drill Resources, Inc. v. Samson Resources Co.,
352 F.3d 211, 219 (5th Cir. 2003). As the Fifth Circuit explained,

[T]he separability doctrine rests on the assumption that there is an
underlying agreement. That one of the parties later disputes the
enforceability of that agreement does not change the fact that at some
point in time, the parties reached an agreement, and that agreement
included the decision to arbitrate disputes arising out the agreement. The
existence of this agreement provides the arbitrator with the authority
required to decide whether the agreement will continue to exist. Even if
the arbitrator concludes that the agreement was void, and the parties are
returned to their pre-agreement positions as if the agreement never
existed, the agreement existed long enough to give the arbitrator the
power to decide the dispute. 


Id. at 218-19. 

 We conclude the determination by the arbitrator that Stature committed common-law fraud does not establish that the arbitration clause was obtained by fraud because
the arbitration clause is severed from the entire agreement. See id. Moreover, the
procedure for challenging whether an arbitration agreement was obtained by fraud is
to be held before the trial court, when the trial court is determining whether to compel
arbitration. See First Options, 514 U.S. at 943, 115 S. Ct. at 1924. After the trial court
orders the case to be sent to arbitration, the arbitrator is not determining the
effectiveness of the arbitration agreement but rather the remaining part of the contract
that is severed from the arbitration agreement. Labatt, 279 S.W.3d at 647-49. In
Labatt, the Supreme Court of Texas said,

There are two types of challenges to an arbitration provision: (1) a
specific challenge to the validity of the arbitration agreement or clause,
and (2) a broader challenge to the entire contract, either on a ground that
directly affects the entire agreement, or on the ground that one of the
contrat's provisions is illegal and renders the whole contract invalid. A
court may determine the first type of challenge, but a challenge to the
validity of the contract as a whole, and not specifically to the arbitration
clause, must go to the arbitrator.

 The beneficiaries challenge the arbitration clause only in the sense
that they also challenge all parts of the agreement because the parts
comprise the whole. But, unless a challenge is to the arbitration clause
or arbitration agreement itself, as it was in In re Poly-America, the
question of a contract's validity is for the arbitrator and not the courts. 
Accordingly, the beneficiaries' challenge to the validity of the
agreement must be determined by the arbitrator, and we do not address
it.


Id. (internal citations omitted). The arbitrator does not revisit the trial court's
determination about the effectiveness of the arbitration clause. See First Options, 514
U.S. at 943, 115 S. Ct. at 1924. We hold the trial court did not err by refusing to vacate
the arbitrator's award based on the arbitrator's finding that Stature committed common-law fraud under the contract. 

 C. Violation of Open Courts

 Also within their third issue, the Fogals assert that they are "entitled to have the
award partially or totally vacated on public policy grounds" because "this State has a
long history of avoiding the obligations of contracts found to be fraudulent or illegal." 
Violation of public policy is no longer a legally recognized ground for vacating an
arbitration award. Allstyle Coil Co., L.P. v. Carreon, No. 01-07-00790-CV, 2009 WL
1270411, at *2 (Tex. App.--Houston [1st Dist.] May 7, 2009, no pet. h.). Moreover,
the Fogals present no evidence that the arbitration clause was fraudulently obtained;
their sole evidence of fraud concerned the agreement as a whole, which was severed
from the arbitration clause. See Forest Oil Corp. v. McAllen, 268 S.W.3d 51, 56 (Tex.
2008) ("While an arbitration agreement procured by fraud is unenforceable, the party
opposing arbitration must show that the fraud relates to the arbitration provision
specifically, not to the broader contract in which it appears."). 

 D. Challenges to Arbitrator's Evidentiary Hearing on the Merits

 As part of their third issue, the Fogals assert the arbitrator substantially
prejudiced the Fogals' rights by refusing to hear the claims of fraudulent inducement
separate from all other claims. The Fogals state, "By denying [the Fogals] an
opportunity to be heard initially on the issues of fraud and fraudulent inducement and
by ordering [the Fogals] to present all of their claims together, the arbitrator conducted
the hearing in a manner which substantially prejudiced [the Fogals'] rights."

 The FAA provides as a ground for vacating an award that the "arbitrators
refus[ed] to hear evidence pertinent and material to the controversy." 9 U.S.C.S.
§10(a)(3). An arbitrator is not bound to hear all the evidence tendered by the parties
as long as each party is given an adequate opportunity to present evidence and
arguments. Babcock & Wilcox Co. v. PMAC, Ltd., 863 S.W.2d 225, 234 (Tex.
App.--Houston [14th Dist.] 1993, writ denied) (applying FAA). Although they
contend the arbitrator erred by not listening to the evidence in the sequence they
wanted the evidence heard, that complaint fails to assert that the arbitrator refused to
hear evidence. We cannot vacate or modify an arbitrator's award merely because the
arbitrator refused to hear the fraud claims separate from the other claims. See id.

 In a footnote within the third issue, the Fogals contend the arbitrator refused to
hear evidence of damage to credit reputation as an element of the fraud claim. The
Fogals assert that this "refusal alone is grounds to vacate the award." The record shows
that the arbitrator held a three-day hearing, at which the Fogals called six witnesses and
admitted 16 exhibits. Although the arbitrator limited the post-foreclosure evidence, the
Fogals were given an adequate opportunity to present evidence and arguments. See id.
The arbitrator's award cannot be invalidated merely because the arbitrator indicated a
desire not to admit post-foreclosure evidence. See id. Because the Fogals have not
shown that the arbitrator failed to give them an opportunity to present evidence and
arguments, the trial court did not err by refusing to vacate the award. See id.

 We overrule the third issue.



Trial Court's Modification of Arbitrator's Award In their fourth issue, the Fogals alternatively assert that the judgment should be
modified by striking the award of attorney's fees to Stature, charging Stature with the
costs in the bill of costs and for the court reporter, and adding an award for pre-judgment interest to the Fogals. In its sole counter-issue, Stature asserts the trial court
impermissibly modified the arbitration award by adding post-judgment interest.

 Texas law favors arbitration. IPCO-G. & C. Joint Venture v. A. B. Chance Co.,
65 S.W.3d 252, 255 (Tex. App.--Houston [1st Dist.] 2001, pet. denied). Because
arbitration is favored as a means of dispute resolution, courts indulge every reasonable
presumption in favor of upholding the award. Id. at 256. An arbitration award has the
same effect as a judgment of a court of last resort, and a court reviewing the award may
not substitute its judgment for the arbitrator's merely because the court would have
reached a different decision. Id. A mistake of fact or law is insufficient to set aside an
arbitration award. Id. In the absence of a statutory or common-law ground to vacate
or to modify an arbitration award, a reviewing court lacks jurisdiction to review other
complaints. Id. 

 In pertinent part, the FAA allows an arbitration award to be modified in the event
(1) the award has an evident material miscalculation or material mistake; or (2) the
form of the award is imperfect in a way that does not affect the merits. 9 U.S.C.S. § 11. 
 "These grounds speak to errors that are clerical in nature rather than legal." Quinn v.
NAFTA Traders, Inc., 257 S.W.3d 795, 798 (Tex. App.--Dallas 2008). The Fifth
Circuit has defined "evident material miscalculation or material mistake":

"[W]here the record that was before the arbitrator demonstrates an
unambiguous and undisputed mistake of fact and the record demonstrates
strong reliance on that mistake by the arbitrator in making his award, it
can fairly be said that the arbitrator 'exceeded [his] powers . . . .'" We
interpret the term "undisputed" to mean we should look to see whether
there is any rational basis for disputing the truth of the fact.


McIlroy v. Paine Webber, Inc., 989 F.2d 817, 821 (5th Cir. 1993) (internal citation
omitted); see also Valentine Sugars, Inc. v. Donau Corp., 981 F.2d 210, 214 (5th Cir.
1993); Ehrich v. A.G. Edwards & Sons, Inc., 675 F. Supp. 559, 565-66 (D.S.D. 1987)
(finding calculation of interest based on wrong number of months to be "evident
miscalculation of figures"). "One federal court of appeals has indicated that a
miscalculation of figures is 'evident' only if it appears on the face of the arbitration
award itself." McGrath v. FSI Holdings, Inc., 246 S.W.3d 796, 813 (Tex.
App.--Dallas 2008, pet. denied) (citing Apex Plumbing Supply, Inc. v. U.S. Supply Co.,
142 F.3d 188, 194 (4th Cir. 1998)). An award is imperfect in a matter of form not
affecting the merits of the controversy when the parties have a stipulation or agreement
that the arbitrator's award fails to take into account. See Lummus Global Amazonas,
S.A. v. Aguaytia Energy Del Peru, S.R. LTDA, 256 F. Supp. 2d 594, 634-36 (S.D. Tex.
2002); see also Atl. Aviation, Inc. v. EBM Group, Inc., 11 F.3d 1276, 1283-84 (5th Cir.
1994).

 The Fogals contend the arbitrator improperly (1) awarded Stature attorney's fees
as damages, (2) failed to include the amount for their bill of costs and for the court
reporter in those costs that Stature must pay; and (3) failed to include pre-judgment
interest in the award. The arbitrator's award included attorney's fees as the damages
caused by the Fogals' breach of the arbitration agreement. Moreover, the Fogals admit
they never submitted their Bill of Costs to the arbitrator, though all expenses were
incurred prior to issuance of the arbitrator's award. These rulings and the refusal to
award pre-judgment interest are not evident material miscalculations or material
mistakes, are based on issues submitted to the arbitrator, and do affect the merits of the
award. See 9 U.S.C.S. § 11. Therefore, we must uphold the arbitrator's award on these
issues. See Babcock, 863 S.W.2d at 234-35 (holding arbitrator's calculation of
damages was within arbitrator's discretion, not material miscalculation); AIG Baker
Sterling Heights, L.L.C. v. Am. Multi-Cinema, Inc., 508 F.3d 995, 999-1001 (11th Cir.
2007) (holding no material mistake or miscalculation when award did not compensate
for payments never submitted to arbitrator); McGrath, 246 S.W.3d at 813 (holding trial
court properly refused to modify arbitrator's award by adding attorney's fees because
no evidence of material miscalculation). 

 In response to the Fogals' assertions, we note that the Fogals are not entitled to
pre-judgment interest under any applicable Texas statute. The FAA does not address
pre- and post-judgment interest on an arbitrator's award, so the Fogals are not entitled
to pre-judgment interest under the FAA. See 9 U.S.C.S. §§ 1-307. Nor are the Fogals
entitled to pre-judgment interest under the Texas Finance Code. The Texas Finance
Code provides that monetary judgments for property damage earn pre-judgment
interest, but that provision applies only to judgments rendered by courts, not to awards
rendered by arbitrators. See Tex. Fin. Code Ann. § 304.102 (Vernon 2006); Blumberg
v. Bergh, No. 02-04-00138-CV, 2005 WL 1047592, at *6 (Tex. App.--Fort Worth May
5, 2005, no pet.) (mem. op.) ("Arbitrators are not courts."); see also Nuno v. Pulido,
946 S.W.2d 448, 452 (Tex. App.--Corpus Christi 1997, no writ).

 We conclude the trial court did not err by failing to modify the arbitrator's award
to add pre-judgment interest. We overrule the Fogals' fourth issue. 

 On cross-appeal, Stature contends the trial court erred by modifying the
arbitrator's award to add post-judgment interest. We agree. Because the Fogals have
not shown that the arbitrator made a mistake or material miscalculation in refusing to
award post-judgment interest, the trial court erred by adding post-judgment interest to
the award. See Kosty v. S. Shore Harbour Comm. Ass'n, 226 S.W.3d 459, 465 (Tex.
App.--Houston [1st Dist.] 2006, pet. denied) (holding trial court erred by adding
attorney's fees to the arbitrator's award); Pulido, 946 S.W.2d at 451-52 (holding trial
court erred by adding pre-judgment interest to arbitrator's award); Blumberg, 2005 WL
1047592, at *6 (holding trial court erred by adding post-arbitration interest to
arbitration award). We sustain Stature's sole issue and modify the trial court's
judgment to exclude the award of post-judgment interest.Conclusion

 We modify the trial court's judgment to exclude the award of post-judgment
interest and affirm as modified.


 

 Elsa Alcala

 Justice 

 

Panel consists of Justices Keyes, Alcala, and Taft. (1)
1. Justice Tim Taft, who retired from the First Court of Appeals on June 1, 2009,
continues to sit by assignment for the disposition of this case, which was submitted
on December 9, 2008.